# Exhibit A

**Debevoise**
**&Plimpton**

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

USP Pollock
1000 Airbase Road,
Pollock, LA 71467

August 14, 2019

### Kevin Haynes (Reg. No. 43015-053) Application for Compassionate Release

Dear Sir / Madam Warden of USP Pollock:

I, Kevin Haynes, Reg. No. 43015-053, through counsel, formally and respectfully request that the Bureau of Prisons ("BOP") make a motion on my behalf to the Hon. Raymond J. Dearie requesting compassionate release under 18 U.S.C. § 3582(c)(1)(A). This request is based on the "extraordinary and compelling" circumstances asserted throughout this application, in the multiple letters that have been sent to the United States Attorney on my behalf, and in the motion and related briefing submitted to Judge Dearie seeking relief under Rule 48. *See* Ex. 1 (Letter to Robert L. Capers (January 9, 2017)); Ex. 2 (Letter to Richard P. Donoghue (May 17, 2018)); Ex. 3 (Mot. to Dismiss Count 8 of the Superseding Indictment Pursuant to Fed. R. Crim. Pro. 48, 93-cr-1043-RJD (E.D.N.Y. Jan. 7, 2019), ECF No. 89)). Such circumstances include, but are not limited to, the passage of the First Step Act in December 2018—in which Congress acknowledged that 18 U.S.C. § 924(c) was improperly "stacked" in my indictment resulting in an excessive and unjust term of imprisonment—and the extensive rehabilitation I have undergone since being incarcerated. I have also attached a proposed release plan as required by the BOP rules. *See* Ex. 4 (Release Plan).

Judge Dearie observed at a recent status conference in my case that there appeared to be a consensus that a forty-six and a half year mandatory prison sentence for the crimes I committed "is woefully excessive," and noted "there's got to be a way to resolve

- 2 -

it." Status Conf. (Dec. 13, 2018).  I hope you will agree and make a motion on my behalf

requesting compassionate release.  Thank you for your consideration in this regard.

Respectfully submitted,

Kevin Haynes



**Debevoise**
**&Plimpton**

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

David Sarratt
Partner
dsarratt@debevoise.com
Tel   +1 212 909 6864

January 9, 2017

Hon. Robert L. Capers
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

Dear Mr. Capers:

*U.S. v. Kevin Haynes*, 93 Cr. 1043 (RJD)

I write about Kevin Haynes, who was sentenced to a 558-month prison term (46 years and six months) in 1994, based on his involvement in four bank robberies. The robberies accounted for only 18 months of that prison term; the rest was a result of three counts brought under 18 U.S.C. § 924(c), which forced the sentencing judge to impose mandatory consecutive terms totaling 45 years. Haynes has served 23 years of his term; his projected release date is April 22, 2034.

The use of § 924(c) to which Haynes was subjected— the practice commonly referred to as "stacking"— has fallen into disrepute in recent years, largely because it produces unjustly severe sentences that disproportionately affect low income defendants and punishes them for exercising their right to trial. In 2011 the Sentencing Commission formally asked Congress to amend the statute to put an end to it. The Judicial Conference of the United States has also urged Congress to do so. A pending bill, co-sponsored by Senate Judiciary Chairman Charles Grassley and various others, would do just that, and it would also provide for retroactive relief. Finally, the use of "stacked" § 924(c) counts to punish defendants who insist on going to trial is in serious tension with current DOJ policy.

Quite a few United States Attorneys and United States District Judges have acted to remedy the grossly unjust prison terms that stacked § 924(c) produced in years past. I write to respectfully ask you to join them. Specifically, I ask you to consider agreeing to vacate one of Haynes' § 924(c) convictions so Judge Dearie, if he deems it appropriate, can resentence him to a more just term of imprisonment, which we will contend is one that will allow him to be released immediately. Set forth below are the reasons for my request. Once you have had an opportunity to review and consider them, I and my colleague Reneé Garrick, who is working with me on the case, would appreciate an opportunity to speak to you personally in support of this request. If, in your judgment, it would be useful to seek a conference with Judge Dearie, I would welcome that as well.

Hon. Robert L. Capers                   2                      January 9, 2017

A.    *The Offenses of Conviction*

Haynes engaged in serious criminal conduct that was deserving of serious punishment. He was charged with four bank robberies along with Virgil Rivers. The robberies are described briefly below.

- On July 23, 1991 Rivers entered a Chase Manhattan Bank branch at 74-02 101st Avenue in Queens with a handgun. After Rivers secured the lobby, Haynes entered the bank, also with a handgun, and acted as a lookout while Rivers vaulted the counter to get money from the tellers' drawers. During the robbery, Haynes pointed his weapon at customers and ordered a bank employee to "put the phone down." Rivers and Haynes escaped with $5,719. Nobody was physically injured during this robbery.

- On September 13, 1991, Rivers entered a Bowery Savings Bank branch in Brooklyn armed with a handgun. He placed the gun against a guard's back, at which time Haynes entered the bank, also displaying a handgun. Haynes stood by the entrance to the bank as Rivers jumped over the counter, pointed his gun at the tellers, and removed $11,250 from the tellers' drawers. Rivers and Haynes then exited the bank and left the scene in a vehicle driven by a third person. Nobody was physically injured during this robbery.

- On October 21, 1991, Rivers and Haynes entered a Chemical Bank branch at 217 Havemeyer Street in Brooklyn. The modus operandi for this robbery was almost identical to ones described above. In addition, Haynes ordered a customer at gunpoint to open her purse and give him all of her money. Rivers and Haynes escaped with $19,968. Nobody was physically injured during this robbery.

- February 19, 1992, Rivers and Haynes entered a Chase Manhattan Bank branch at 1501 Avenue M in Brooklyn. No gun was displayed on this occasion, although Rivers made the statement, "give me your money or I'll blow your brains out." Rivers and Haynes escaped with $5,382. Nobody was injured during this robbery.

Haynes was arrested on September 1, 1993.

B.    *Procedural History*

Haynes' case followed a pattern that was typical in its time. He was initially indicted on September 14, 1993 on only six charges: conspiring with Rivers to rob banks; the four robberies; and a single § 924(c) count. The government was aware at the time that guns were used in three of the four robberies, but it wisely concluded that a single § 924(c) count was enough.

In November 1993 Judge Dearie set a trial date for early January. The following month, in a letter dated December 22, 1993, the government offered Haynes a plea bargain. Haynes would plead guilty to one bank robbery count (Count Two) and one § 924(c) count (Count Six). The government estimated an offense level of 20 on Count Two (including a two level reduction for acceptance of responsibility) and a Guidelines range 33 to 41 months in prison, to be followed by the mandatory five year consecutive sentence for Count Six.

Hon. Robert L. Capers                     3                     January 9, 2017

Haynes wanted a trial, however, as there were a number of triable factual issues, and so declined the government's offer. In response, the government sought a superseding indictment returned on December 29, 1993, adding counts Seven and Eight – the two § 924(c) counts it had initially decided not to bring.

Haynes objected, arguing that the stacking of the two additional § 924(c) counts in retaliation for his decision to go to trial violated his due process rights. In an order dated January 13, 1994, Judge Dearie correctly denied that motion, citing *Bordenkircher v. Hayes*, 434 U.S. 357 (1978). But as the Department of Justice has since acknowledged, the mere fact that this use of mandatory sentencing provisions is constitutional doesn't make it right. Haynes proceeded to trial before a visiting judge, was found guilty of all counts, and was sentenced to more than 46 years. If Haynes had pled guilty, the government would have been satisfied with fewer than ten. Haynes' exercise of his constitutional right to a trial by jury should not have cost him between 35 and 40 years of his life.

In the years since his incarceration, Haynes has filed numerous motions *pro se* seeking to reduce his term of imprisonment, all of which have been dismissed. Haynes filed a 28 U.S.C. § 2255 motion with the Eastern District of New York in November 2004, which was denied. Haynes filed a second 28 U.S.C. § 2255 motion with the United States Court of Appeals for the Second Circuit in June of 2016, which was also denied.

C.     *The Origin of § 924(c)'s Excessive Severity*

As you know, § 924(c) does not simply mandate sentences; it mandates consecutive and dramatically enhanced sentences for "second or subsequent convictions." On its face, the statute as enacted was harsh, but its harshness appeared to be limited to recidivists, that is, to defendants convicted of a § 924(c) offense who had been convicted and sentenced on a § 924(c) charge in a prior case. But that changed when the Supreme Court held in *Deal v. United States*, 508 U.S. 129 (1993), that the "second or subsequent convictions" that trigger the enhanced mandatory consecutive sentences could occur *in the same case* as the first conviction. After *Deal*, § 924(c) was no longer a recidivist statute, and that case cemented the truly excessive harshness that can follow when multiple § 924(c) charges are brought in one case.

The statute became a powerful sentencing club, and many districts deployed it as a means of inducing guilty pleas. Specifically, § 924(c) counts were typically charged when the facts supported them, and in exchange for pleas of guilty one or more of them would be dismissed. Defendants who declined such offers and went to trial faced the full brunt of the mandatory consecutive punishments. Almost to a person, the inmates serving extremely long sentences due to the stacking of § 924(c) counts went to trial, and their sentences are often grossly disproportionate to the sentences of others charged with stacked § 924(c) counts who pled guilty.

D.     *The Racially Discriminatory History of Stacking § 924(c) Counts*

The Sentencing Commission has also recognized the stark racial differences in the application of § 924(c)'s mandatory minimum penalties. In its 2004 report entitled *Fifteen Years*

Hon. Robert L. Capers                          4                          January 9, 2017

*of Guidelines Sentencing*, the Sentencing Commission wrote that Black defendants had been disproportionately subjected to § 924(c) "stacking" for decades. Specifically, they accounted for 48% of offenders who qualified for a charge under § 924(c), but they represented 56% of those actually charged under the statute, and 64% of those convicted under it.[1]  The Mandatory Minimum Report found that Black offenders still constitute the majority of offenders – 55.7% – who are subjected to § 924(c)'s mandatory minimum penalties at sentencing.[2]  Black offenders are also convicted of multiple 924(c) counts in greater proportions – 61% – than other ethnicities.[3]  The Sentencing Commission recognized these racial differences create an impression of "unfairness and unwarranted disparity" that is difficult to refute.[4]

E.      *The Condemnation of the "Stacking" of § 924(c) Counts*

In recent years, the stacking feature of § 924(c) has received virtually unanimous condemnation.  The Sentencing Commission, the Judicial Conference of the United States, and Senate leaders on both sides of the aisle have urged the amendment of the statute to eliminate the truly excessive punishments it now mandates.  And the use of § 924(c) counts to punish defendants for exercising their right to trial cannot be reconciled with recently-promulgated DOJ policy.

    1.      *The United States Sentencing Commission*

In its October 2011 *Report to Congress:  Mandatory Minimum Penalties in the Federal Criminal Justice System*, referred to here as "the Mandatory Minimum Report,"[5] the Sentencing Commission recommended that Congress (1) lower the mandatory sentences in § 924(c); (2) make the enhanced sentences for second or subsequent convictions applicable only when the first § 924(c) conviction occurred in a prior case; and (3) allow for concurrent sentences on "stacked" counts.[6]  These amendments are necessary, the Commission stated, to remedy the "excessively severe and disproportionate sentences" in these cases.[7]

    2.      *The Judicial Conference*

The Judicial Conference of the United States has urged Congress on multiple occasions to amend the draconian penalties produced by § 924(c).[8]  On one such occasion, the Chair of the Criminal Law Committee described § 924(c) as one of the "most egregious mandatory minimum provisions that produce the unfairest, harshest, and most irrational results in the cases sentenced

---

[1] The report can be found at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/15-year-study/15_year_study_full.pdf.  The data set forth in the text is on page 90.
[2] *See* Mandatory Minimum Report at 363.
[3] *Id.* at 363.
[4] *Id.*
[5] The report can be found at http://www.ussc.gov/research/congressional-reports/2011-report-congress-mandatory-minimum-penalties-federal-criminal-justice-system.
[6] Mandatory Minimum Report at 368.
[7] *Id.* at 359.
[8] *Id.* at 360 & n. 904.

Hon. Robert L. Capers                         5                         January 9, 2017

under their provisions."[9]  The Conference specifically asked Congress to "establish § 924(c) as a
'true' recidivist statute," such that the "second and subsequent" enhancement would apply only
when a defendant has been "previously convicted of a § 924(c) offense prior to the firearm
possession that led to the § 924(c) charge being sentenced."[10]

      3.     *The Legislature*

Just over a year ago, Senate Judiciary Chairman Charles Grassley led a bipartisan effort
to implement that recommendation.  The Sentencing Reform and Corrections Act of 2015 (S.
2123), introduced on October 1, 2015 by Senator Grassley and eight other senators from both
major parties, would amend § 924(c) to permit the "second or subsequent" offense enhancement
only when the offense of conviction occurred after a prior conviction became final.  It would also
lower the mandatory sentence from 25 years to 15 years.  Finally, the legislation, if passed,
would provide *retroactive* relief for current inmates who do not have a prior conviction for a
serious violent felony.[11]

      4.     *DOJ Policy*

Finally, the practice of using stacked § 924(c) counts to induce defendants to plead guilty
– and thus to punish those who insist on a trial – has been condemned by DOJ in closely
analogous circumstances.  The same use had been made of so-called "851 enhancements," true
recidivism-based enhancements of the drug offense mandatory minimum sentences.  After
receiving harsh criticism of the use of such enhancements to coerce guilty pleas (and to punish
those who refuse to plead guilty)[12], the Attorney General prohibited the practice on September
24, 2014.[13]  "Whether a defendant is pleading guilty," the memorandum states, "is not one of the
factors enumerated in the charging policy."  The same fairness principle applies equally to the
time-honored use of § 924(c) as a means of penalizing a defendant's exercise of his right to a
trial by jury.  We have canvassed innumerable cases from around the country, and there is no
context in which the "trial penalty" is greater than § 924(c) cases.

---

[9] *Mandatory Minimums and Unintended Consequences:  Hearing on H.R. 2934, H.R. 834, and H.R. 1466 Before the
Subcomm. on Crime, Terrorism and Homeland Security of H. Comm. on the Judiciary*, 110th Cong. 60-61 (2009)
(statement of C.J. Julie E. Carnes), https://judiciary.house.gov/_files/hearings/pdf/Carnes090714.pdf.
[10] *Id.* at 29-30.
[11] The text of S.2123 can be found at https://www.congress.gov/bill/114th-congress/senate-bill/2123/text#toc-
id8aacf504b8c64f799ad8fe5180d5144e.
[12] *See e.g.*, *United States v. Kupa*, 976 F. Supp. 2d 417 (E.D.N.Y. 2013) (criticizing the use of recidivism-based
enhancements of the drug offense mandatory minimum sentences to coerce guilty pleas and to punish those who
refuse to plead guilty); *An Offer You Can't Refuse, How US Federal Prosecutors Force Drug Defendants to Plead
Guilty*, Human Rights Watch (Dec. 5, 2013), https://www.hrw.org/report/2013/12/05/offer-you-cant-refuse/how-us-
federal-prosecutors-force-drug-defendants-plead.
[13] Office of the Att'y Gen., Memorandum from Att'y Gen. Eric Holder to DOJ Attorneys:  Guidance Regarding §
851 Enhancements in Plea Negotiations (Sept. 24, 2014), *available at* https://www.fd.org/docs/select-
topics/sentencing-resources/memorandum-to-all-federal-prosecutors-from-eric-h-holder-jr-attorney-general-on-851-
enhancements-in-plea-negotiations.pdf?sfvrsn=6.

Hon. Robert L. Capers                          6                          January 9, 2017

This case is a perfect example. Haynes did not face three § 924(c) counts because the government felt that was necessary to protect the community. Nor did he face three § 924(c) counts because the government felt that those harsh mandatory consecutive sentences were needed to reflect the seriousness of his criminal conduct, or to incapacitate him. Indeed, the government made it clear that all of those interests would have been served by a sentence of less than ten years in prison. The only reason Haynes faced the crushing weight of stacked § 924(c) counts at sentencing is he went to trial. It is not even a slight exaggeration to say that Haynes paid for his exercise of that fundamental right with at least 35 years of his liberty. There is no fairness, no justice, in that outcome, and you are in a position to help remedy it.

Standing alone, Haynes' case cries out for relief. But as you know, one of the critical factors in federal sentencing is "the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct."[14] And when Haynes' case is compared to that of the other participant in the crimes, Virgil Rivers, the cruelty of Haynes' sentence is placed in even starker relief.

At the time the crimes in this case were committed, Haynes was an unemployed 23 year-old father who had never even been arrested. He was recruited by Rivers, who was more than 20 years his senior and an experienced robber. Indeed, Rivers had four prior robbery convictions.[15] However, because he pled guilty, Rivers faced just one § 924(c) count and he was sentenced to just ten years in prison.[16] Thus, based solely on his decision to go to trial, Haynes got 36 and one-half years more in prison than a far more culpable participant in the exact same crimes with a far worse criminal history.

Indeed, Rivers, who was released from prison more than 15 years ago, got back into the bank robbery business in 2003, and he was convicted again in your district. He was sentenced to 25 years by Judge Block in 2006.[17] But even so, compared to Haynes, Rivers, who is now 69 years old, is still doing much better. He is scheduled to be released from prison on April 16, 2026, *eight years before* Haynes will be released from prison on this case.[18]

In short, the disparate treatment of the two participants in the offenses in this case is absurd. It is an embarrassment to our system of justice. And it cannot be attributed to any leniency in the treatment of Rivers. Rivers got ten years in this case; the average robbery defendant last year got only 77 months.[19] Then Rivers got 25 years for his subsequent robbery, a very serious sentence indeed. Yet despite both sentences and the fact that he was more culpable back in 1993 than Haynes, Rivers will be free once again almost a decade before Haynes.

---

[14] 18 U.S.C. § 3553(a)(7).
[15] See *United States v. Rivers*, 50 F.3d 1126, 1127 (2d Cir. 1995).
[16] See *United States v. Rivers*, 1:92-CR-00327-RJD (E.D.N.Y. June 17, 1994)
[17] See U.S.A. v. Copeland et al, 1:03-CR-01120-FB-2 (E.D.N.Y. March 10, 2006)
[18] This information can be found at: https://www.bop.gov/inmateloc/
[19] *See* United States Sentencing Commission, Interactive Sourcebook of Federal Sentencing Statistics, Fiscal Year 2015, Table 13, available at http://isb.ussc.gov/content/pentaho-

Hon. Robert L. Capers                    7                    January 9, 2017

F.     *The Relief We Seek and the Basis For It*

We ask you to agree to vacate one of Haynes' § 924(c) convictions. If you do, we will ask Judge Dearie to resentence him on the remaining counts to a sentence that will allow him to be released from custody immediately. Even that sentence – the minimum would be 25 years, which (counting good time) Haynes has already served – would be excessive, 13 months higher than last year's average federal sentence *for murder*.[20]

The court will have jurisdiction to grant the relief we seek if you agree to it. There is a large and growing number of United States Attorneys who have done what we ask of you and sentencing judges who have acted on their decisions by correcting miscarriages of justice. The Attorney General of the United States herself appears to have been the first to agree to it when she was the United States Attorney in the Eastern District of New York. *United States v. Holloway* involved a defendant who was found guilty in 1995 of three carjackings and three § 924(c) counts.[21] He refused a plea offer that would have resulted in the dismissal of two of those counts and was sentenced after trial to 57 years and seven months. Just as this case, the stacking of the § 924(c) charges accounted for the overwhelming bulk of the sentence. In 2012, the sentencing judge recognized that although there were good reasons to revisit Holloway's unjust sentence, there were no legal avenues for vacating it. So he issued an "order" stating "I respectfully request that the United States Attorney consider exercising her discretion to agree to an order vacating two or more of Holloway's 18 U.S.C. § 924(c) convictions."[22] The United States Attorney initially declined the court's invitation on the ground that Holloway could seek clemency. After the court pointed out to her in a subsequent written "order" that DOJ's own criteria for a successful clemency application would almost certainly disqualify Holloway, United States Attorney Loretta Lynch reconsidered, withdrew her objection, and agreed to vacate two of Holloway's § 924(c) counts.[23]

*Holloway* stands for a simple proposition: Even when there is no defect in the conviction that has mandated an unjust sentence, a United States Attorney "can do justice by the simple act of going back into court and agreeing that justice should be done." 68 F. Supp. 3d at 311.

*Holloway* is no outlier. Numerous other United States Attorneys have agreed to such relief, and numerous other judges have granted it based on that agreement. The contexts include stacked § 924(c) sentences but extend beyond them to the extremely harsh sentences mandated by the drug trafficking statutes.

Thus, for example, Judge Jan DuBois relied on *Holloway* in asking the United States Attorney in Philadelphia to agree to withdraw the "851 enhancement" that mandated a life

---

[20] The average federal sentence for murder in FY 2015 was 287 months. *See* United States Sentencing Commission, Interactive Sourcebook of Federal Sentencing Statistics, Fiscal Year 2015, Table 13, available at http://isb.ussc.gov/content/pentaho-cdf/RenderXCDF?solution=Sourcebook&path=&action=table_xx.xcdf&template=mantle&table_num=Table13. The median sentence for murder was 300 months. *Id.*

[21] *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014).

[22] *Holloway v. United States*, No. 01-CV-1017, Order, ECF No. 36 (E.D.N.Y. Feb. 25, 2013).

[23] 68 F. Supp. 3d at 315.

sentence in *United States v. Trader*.[24]  In his opinion he cataloged some other cases in which "[p]rosecutors have exercised this power to do justice."[25]  For example, in *United States v. Williams*, a sentencing judge in the District of Montana, with the government's consent, dismissed three of four § 924(c) counts of which the defendant had been convicted at trial.[26]  In the same district, in *United States v. Hungerford*, the government moved to dismiss all but two counts of conviction, including seven § 924(c) counts.[27]

In 2015, at the request of *pro bono* counsel, the United States Attorney in the Eastern District of Oklahoma relied expressly on *Holloway* in agreeing to vacate a life sentence imposed pursuant to 21 U.S.C. § 848(b).  Rivera had been the central figure in a cocaine smuggling operation that used private airplanes to smuggle hundreds of kilograms of cocaine from Colombia to Oklahoma.  Thirty years into his life sentence, the United States Attorney granted what he called a "*Holloway* request" by agreeing to an order vacating the conviction on the § 848(b) count and to sentences amounting to time served on the remaining counts.  "Such action is not without precedence," the United States Attorney informed the court, in a submission quoting from *Holloway*.[28]  On September 15, 2015, Judge Frank Seay, who had imposed the life sentence on Rivera 30 years earlier, granted the relief requested, and Rivera was immediately released.[29]

Like Judges DuBois and Seay, Judge Richard Sullivan in the Southern District of New York endorsed *Holloway* in asking United States Attorney Preet Bharara to agree to vacate a § 924(c) conviction.[30]  Randy Washington was charged with a variety of robbery, narcotics, and firearm crimes.  He rejected the government's ten-year plea offer, was found guilty on all counts at trial, and faced a mandatory minimum sentence of 52 years in prison.  Judge Sullivan rejected Washington's legal challenges to his convictions, but in a section of his written opinion called "Final Thoughts," he addressed the fundamental injustice of the mandatory sentence.  Specifically, he wrote that "a serious question posed by the facts of this case—and perhaps the elephant in the room—is the fairness of the fifty-two year mandatory minimum sentence that Defendant is facing because he opted to forego a ten-year plea offer and go to trial."[31]  Judge Sullivan added that "[n]ot all that is constitutional is just and it is difficult to see how a forty-two year trial penalty for a twenty-seven year old defendant who is not alleged to have fired a weapon, much less killed anyone, could be 'the right thing'—no matter how that vague term is defined."[32]  "Here the Court is left with the definite impression that a fifty-two year sentence is

---

[24] *United States v. Trader*, 2015 WL4941820 (E.D. Pa. Aug. 19, 2015), at * 16.

[25] *Id.* 4 n. 12.

[26] *Id.* (referring to *United States v. Williams*, No. 12-cr-8 (D. Mont. Dec. 18, 2012)).

[27] *Id.* (referring to *United States v. Hungerford*, No. 03-cr-74 (D. Oct. 27, 2010)).

[28] *See United States v. Rivera*, Nos. 83-00096-01-CR & 83-00138-02-CR (E.D. Okla), Gov.'s Response Br. to Def.'s Mot. to Vacate dated Sept. 15, 2015 (supporting defendant's motion to vacate and recommending that the Court grant the relief requested).

[29] *See United States v. Rivera*, Nos. 83-00096-01-CR & 83-00138-02-CR (E.D. Okla.), Order of Sept. 15, 2015 (granting defendant's motion to vacate and resentence after the government agreed to support the motion).

[30] *United States of America v. Randy Washington*, No. 11-cr-605-RJS, Order (S.D.N.Y. July 31, 2014).

[31] *Id.* at 12.

[32] *Id.*

unnecessary and unjust.  Nevertheless in this regard, the Court is powerless to do more than admonish, and can merely ask that the prosecutors involved in this case—at all levels—consider whether this is a sentence and an exercise of prosecutorial discretion worthy of the public's trust and confidence."[33]

The United States Attorney listened, and on December 18, 2014 he moved to dismiss one of the § 924(c) counts.[34]

Just a few months ago, Judge Graham Mullen in the Western District of North Carolina asked the government for the same consideration we ask of you.  The case was *United States of America v. Tate*.[35]  Tate was sentenced in 1995 to a 960-month prison term, of which 780 months were the result of stacked § 924(c) counts.  He filed a *pro se* application seeking relief based on the *Holloway* case, and on April 4, 2016, Judge Mullen issued the following order:

> This matter is before the Court upon the *pro se* defendant's motion to reconsider the judgment, which the Court will refer to as a "*Holloway* request," filed on March 26, 2015.  The Court hereby directs that the government respond to this motion within fourteen days.[36]

The United States Attorney in Charlotte accepted the invitation to help do justice, and ten days later the court entered the following order:

> This matter is before the Court upon the *pro se* defendant's motion to reconsider the judgment, which the Court has referred to as a "*Holloway* request."  The Court directed the government to respond to this motion and on April 12, 2016, the government filed a response indicating that it had no objection to the equitable relief requested by Mr. Tate given the unique facts and circumstances of this case. ~~Based upon the concurrence of the government, the Court hereby reopens Mr.~~ Tate's case for the purpose of vacating the four § 924(c) convictions.  This reduces Mr. Tate's sentence to 188 months incarceration.  As Mr. Tate has already served over twenty years, he is eligible for release.  The Court therefore resentences Mr. Tate to time served plus ten days.[37]

The cases above are illustrative of a significant number of cases in which United States Attorneys have acted to empower courts to remedy unjust mandatory sentences.  Prosecutors, defense counsel, judges, and defendants themselves have described for us many more cases in which *Holloway*-type relief has been granted without opinions being written that memorialize the basis for the relief.

Respectfully, it is no answer to our request to relegate Haynes to the clemency process.  While we are rooting for him on that front, the nature of his underlying criminal activity renders him an unlikely candidate for such relief.  Attorney General Lynch obviously agreed with that

---

[33] *Id.*
[34] *United States of America v. Randy Washington*, No. 11-cr-605-RJS, Nolo Pros. (S.D.N.Y. December 18, 2014).
[35] *United States of America v. Tate*, Case No. 3:94 CR 147-GCM (W.D.N.C. April 12, 2016).
[36] *See United States v. Tate*, Case No. 3:94-CR-147 (W.D.N.C.), ECF NO 149, Order of Apr. 4, 2016.
[37] *Id.*, ECF NO. 151, Order of Apr. 14, 2016.

assertion in *Holloway* itself; indeed, it caused her to reverse her initial decision not to agree to a vacatur of two of Holloway's § 924(c) convictions.

G.      *Haynes is Deserving of Mercy*

At the time of his crimes, Haynes was 23 years old. His parents, Roosevelt Richardson and Mattie Haynes, separated when Haynes was an infant. His mother retained custody of Haynes and his siblings. Richardson maintained regular contact with the children and provided financial support through his earnings as proprietor of a candy store. A short time after their separation, Haynes' mother began a live-in relationship with John Martin, whom Haynes came to regard as his stepfather. Haynes' father died in 1987, when Haynes was just 19 years old. In 1993 Haynes' stepfather died. Haynes remains very close to his mother, who is very supportive of her son and committed to helping him become a productive, law abiding member of society.

Haynes received his high school diploma in 1987, and he completed the Nurses' Aide Certificate Program offered by Murry Bergtraum High School in 1987-88. Haynes held several jobs thereafter, including for gas and plumbing companies, trucking and ambulance driving, as well as air conditioning servicing.

Haynes worked regularly until 1992, when he lost his job as a truck driver after he was involved in an accident. In those circumstances he met the much-older Rivers, and he chose to engage in the robberies with Rivers. That was a decision Haynes regrets deeply, and one that both his mother and sister said at the time was entirely out of character for him. They were biased, of course, because they love Haynes, but the surrounding circumstances corroborate their view. Given the time period and the poor Brooklyn neighborhood in which Haynes was raised, the absence of any interaction between him and the criminal justice system before the age of 23 is significant.

Since his conviction, Haynes has been a model inmate, with the mildest of disciplinary records and a substantial inmate education transcript. He has completed a dozen education courses, logging hundreds of hours in them. Throughout his incarceration, he has maintained an optimistic and positive outlook on life. He has the support and love of his family; his mother is committed to providing him a stable home and supporting him in his efforts to become the productive, law-abiding citizen he wants to be.

Haynes has expressed sincere remorse for his crimes. He recognizes the recklessness that he exhibited as a young, impressionable man and the pain it has caused. He hopes to be a positive influence in the lives of the people around him and especially his children, as the loss of his own paternal figures hugely impacted his decisions. Haynes has developed a strong faith and spirituality that guides him, which he tries to spread to others to encourage them to live positively.

In sum, Haynes' conduct in prison over the past two decades, extensive efforts at rehabilitation, and family support demonstrate that he is deserving of the relief we seek.

Hon. Robert L. Capers                    11                    January 9, 2017

H.     *Release Plan*

Haynes plans to return to Brooklyn to live with his mother.  He is a skilled laborer and plans to return to plumbing and construction work.  He also aspires to return to health care work, in which he evidenced both interest and aptitude before his incarceration by completing a Nurses' Aide Certificate Program.  He hopes to continue his education in this field and to return to helping people.

## Conclusion

Ms. Garrick and I request an opportunity to speak to you personally in support of our request.  If, in your judgment, it would be useful to seek a conference with Judge Dearie, I would welcome that as well.

I look forward to hearing from you.


Very Truly Yours,

David Sarratt


cc:    Hon. Raymond J. Dearie

# EXHIBIT 2

**Debevoise**
**Plimpton**

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

May 17, 2018

Hon. Richard P. Donoghue
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

*U.S. v. Kevin Haynes*, 93-CR-1043 (RJD)

Dear Mr. Donoghue:

I write about Kevin Haynes, who was sentenced by Judge Raymond Dearie in 1994 to a 558-month prison term (46 years and six months) as a result of stacked counts under 18 U.S.C. § 924(c). Specifically, I write to ask you to exercise your discretion to vacate one of the § 924(c) counts that were added to the indictment just before trial. If you do so, that will authorize Judge Dearie to remedy what I respectfully suggest was a seriously unjust sentence. In about three months Haynes will have served 25 years on this case -- the equivalent, taking into account good time credits, of a 30-year sentence. He is 50 years old, and though he has spent more than half of his life in prison, he faces a projected release that is still 16 years away. We ask you please to allow Judge Dearie to bring a small measure of belated justice to bear on that sentence.

I wrote one of your predecessors, Rob Capers, about Haynes early last year, seeking the same relief. Although he appreciated the unfairness of the sentence, he declined the request. I am not simply seeking a rehearing with a new audience; I also write to address the concerns Mr. Capers expressed through Jim Gatta, including a concern about whether a United States Attorney has the authority to approve the relief we seek.

More specific details regarding Haynes' underlying offenses, progress while incarcerated, and release plans are set forth in the letter I sent to Mr. Capers (copying Judge Dearie) in January 2017. (Attached as Exhibit A.) In this letter I briefly summarize the essential facts of the case, focus on recent developments, and set forth responses to the concerns raised by Mr. Capers.

Once you have had an opportunity to review and consider our request, my colleague Reneé Garrick, who is working with me on this case, and I would appreciate an opportunity to speak to you personally in support of this request. If, in your judgment, it would be useful to seek a conference with Judge Dearie, I would welcome that as well. Finally, if you have any doubts, I encourage you to writ Haynes into the district so you can see the man he has become.

Hon. Richard P. Donoghue                                          May 17, 2018

   A.    *Haynes's Offenses*

    As set forth more fully in the January 2017 letter to Mr. Capers, during a seven-month period when he was only 23 years old, Haynes participated in four bank robberies in Queens.. There were no physical injuries, and the total amount of money stolen was less than $45,000.

    Less than a month before trial, Haynes was offered a plea bargain that, if accepted, would have subjected him to a 93-101 month Guidelines range (33-41 months for the robberies and a consecutive 60-months on the only § 924(c) charge in the indictment). He had a triable case, though, so he elected to go to trial. In response, just before trial the government superseded with two more § 924(c) counts. Haynes was found guilty, and the § 924(c) counts alone required Judge Dearie to impose 45 years in prison consecutive to the 18 months he imposed for the robberies. Basically, Haynes got the trial the Sixth Amendment guarantees him, but it cost him 35 to 40 more years in prison than he would have served if he had pled guilty.

    As you know, § 924(c) mandates consecutive and dramatically enhanced sentences for "second or subsequent convictions." On its face, the statute as enacted was harsh, but its harshness appeared to be limited to recidivists, that is, to defendants convicted of a § 924(c) offense who had been convicted and sentenced on a § 924(c) charge in a prior case. But that changed when the Supreme Court held in *Deal v. United States*, 508 U.S. 129 (1993), that the "second or subsequent convictions" that trigger the enhanced mandatory consecutive sentences could occur in the same case as the first conviction.

    The statute became a powerful bargaining chip for prosecutors, and many districts deployed it as a means of inducing guilty pleas. Defendants who declined plea offers and went to trial faced the full brunt of the mandatory consecutive punishments. That is precisely what happened to Haynes. Almost to a person, the inmates serving extremely long sentences due to the stacking of § 924(c) counts went to trial, and their sentences are often grossly disproportionate to the sentences of others charged with stacked § 924(c) counts who pled guilty. Finally, as described in the attached letter to Mr. Capers, the Sentencing Commission has reported that the excessive severity of stacked § 924(c) sentences has been disproportionately visited on Black men like Haynes.

    The stacking feature of § 924(c) has received virtually unanimous condemnation. The Sentencing Commission, the Judicial Conference of the United States, and Senate leaders on both sides of the aisle have urged the amendment of the statute to eliminate the truly excessive punishments it now mandates. Even critics of other forms of sentencing reform, including Attorney General Jeff Sessions and Assistant Deputy Attorney General Steven Cook, have supported changes to § 924(c) that would eliminate the practice that resulted in Haynes' sentence.[1]

---

[1]  In an October 2015 Senate Judiciary Committee discussion regarding sentencing reform, then-Senator Sessions stated, "I think the stacking issue is a problem" and indicated that he would "support reform on the stacking provisions" so that successive consecutive sentences would be reserved for defendants, unlike Haynes, who were convicted of a second 924(c) offense after already serving time on an initial 924(c) crime. S. 2123, Sentencing Reform and Corrections Act of 2015, Senate Committee on the Judiciary (Oct. 22, 2015) (statement of Sen. Sessions, Member, S. Comm. on the Judiciary), *available at* https://www.judiciary.senate.gov/meetings/executive-business-meeting-10-22-15.

Hon. Richard P. Donoghue                                        May 17, 2018

B.    *The Relief We Seek*

In view of this broad recognition of the unfairness § 924(c) stacking can produce, and your authority to correct it promptly, we ask that you agree to vacate one of Haynes' § 924(c) convictions so that he can be resentenced to a more just term of imprisonment. If you agree, we will ask Judge Dearie to resentence him on the remaining counts to a sentence that will allow him to be released from custody immediately. Even that sentence – the minimum would be 25 years, which Haynes has already served – would be excessive, 59 months higher than last year's average federal sentence for murder.[2]

C.    *Legal Authority; Response to Mr. Capers' Concerns*

I will not set forth here all of the cases from around the country in which United States Attorneys have agreed to the relief we seek and judges have granted it. They are described in the attached letter. I had hoped they would persuade Mr. Capers that he too had the power to agree to relief from egregiously unjust sentences, and that inmates like Haynes are not relegated only to the imperfect (to put it mildly) pardon process, a process that holds literally no hope for inmates with § 924(c) convictions like Haynes's. I now hope they persuade you.

In response to our January 2017 letter to Mr. Capers, Jim Gatta said Mr. Capers was inclined to support a clemency petition on behalf of Haynes (indicating his agreement that Haynes' sentence is excessive), but believed that the clemency process was the only available legal mechanism. While we appreciate the attention paid to the request, the view that the clemency process is the only available avenue for relief is wrong.

A United States Attorney can agree to make a motion under Rule 48 of the Federal Rules of Criminal Procedure even after appellate review has concluded and collateral attacks have been exhausted. If he or she does, the judge will have jurisdiction to entertain that application under 18 U.S.C. § 3231. In short, you can agree to seek the relief we have requested, and Judge Dearie will be authorized to grant that relief even though Haynes' conviction and sentence are final.

The relevant portion of Rule 48 states as follows: "The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the

---

Similarly, Mr. Cook, testifying on behalf of the National Association of Assistant United States Attorneys, stated, "NAAUSA supports changes to 18 U.S.C. § 924(c) . . . NAAUSA supports reducing the sentence for the second and each additional 'stacked' offense. Rather than a twenty-five year sentence for the second and each subsequent use of a firearm, NAAUSA supports reducing the mandatory consecutive term from twenty-five years to a mandatory consecutive term consistent with the penalties for the first offense. Thus, an offender who brandished a firearm in connection with two carjackings would receive two 'stacked' seven-year sentences." S. 2123, Sentencing Reform and Corrections Act of 2015, Senate Committee on the Judiciary, Written Statement by Steven H. Cook, President, National Association of Assistant United States Attorneys, (Oct. 19, 2015), *available at* https://www.judiciary.senate.gov/download/10-19-15-cook-testimony.

[2]    The average federal sentence for murder in FY 2016 was 241 months, and the median sentence was 210 months. *See* United States Sentencing Commission, Interactive Sourcebook of Federal Sentencing Statistics, Fiscal Year 2016, Table 13, *available at* https://isb.ussc.gov/content/pentaho-cdf/RenderXCDF?solution=Sourcebook&path=&action=table_xx.xcdf&template=mantle&table_num=Table13

Hon. Richard P. Donoghue                                                    May 17, 2018

prosecution during trial without the defendant's consent."[3]  There is no time limit set forth in the rule, and its text plainly does not preclude a motion after conviction and appeal.[4]

More importantly, even if there were such a limit on the availability of relief under Rule 48, there is no question that you would be authorized to waive it by seeking the relief we request. Both the Fourth Circuit and the D.C. Circuit have made this clear in precisely the same setting this case is in now, that is, where the conviction and sentence are final and all collateral attacks have been exhausted.

*Rice v. Rivera*, 617 F.3d 802, 811 (4th Cir. 2010), involved a 1990 conviction under § 924(c).  In 2008, the defendant sought relief pursuant to 28 U.S.C. § 2241 from the conviction and sentence based on the Supreme Court's construction of § 924(c) in *Bailey v. United States*, 516 U.S. 137 (1995).  In response, the government did two things: (1) it agreed that relief under § 2241 was warranted after *Bailey*; and (2) it independently moved to vacate the conviction.[5] The district court denied both applications.  On Rice's appeal, the government changed course, opposing relief under § 2241, but it did not withdraw the Rule 48 motion.[6]

After rejecting relief under § 2241, the Fourth Circuit turned to the government's motion to vacate.  The court held first that the district court had jurisdiction over the motion pursuant to 18 U.S.C. § 3231.[7]  It then specifically held that such motions may properly be made by the government even after conviction and appeal:  "Although the federal courts have rarely been asked to confront the issue, we are constrained to agree that some measure of jurisdiction over a criminal prosecution remains with a sentencing court even after conviction and appeal."[8] Applying the rubric established by a series of Supreme Court cases, the court held that Rule 48 is a "claims-processing" rule, not a jurisdictional one, and thus any limitations on its applicability in the post-conviction setting could be waived by the government.[9]  Finally, the Fourth Circuit went on to hold that the district court had abused its discretion by *not* granting the government's motion to vacate the conviction.[10]

In short, the United States Attorney in *Rice* had the authority under Rule 48 to move to vacate the § 924(c) conviction despite the fact that the conviction and sentence were final and

---

[3]   Fed. R. Crim. P. 48(a).

[4]   *See also* Levenson, Fed. Crim. Rules Handbook, Author's Commentary on Rule 48 (2016 ed.) ("A district court has jurisdiction to grant a government motion to vacate a judgment even after the defendant has completed his appeals.").

[5]   *Rice*, 617 F.3d at 804, 806.

[6]   *Id.* at 806.

[7]   *Id.* at 808.

[8]   *Id.* at 808–09.

[9]   *Id.* (citing *United States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006)).

[10]  *Id.*; *see United States v. HSBC*, 863 F.3d 125, 141 (2d Cir. 2017).

Hon. Richard P. Donoghue                                                May 17, 2018

collateral relief had been exhausted.  Once the motion was made, the district court had the authority to grant that motion pursuant to § 3231.  The rule of finality that would otherwise have insulated Rice's § 924(c) conviction and sentence did not interfere with an order vacating the conviction because the United States Attorney chose not to rely on it.  That is precisely the course we have asked you to choose here.

The D.C. Circuit decision in *U.S. v. Smith*, on which the Fourth Circuit relied, is to the same effect.  That case involved a Rule 48 motion made long after the conviction had become final, which was granted by the district court.[11]  For unusual procedural reasons that are not relevant here, the defendant argued for the first time on appeal that the district court lacked the power to vacate a conviction and sentence that had become final.[12]  Relying on the same Supreme Court decisions cited by the Fourth Circuit in *Rice*, the D.C. Circuit rejected that argument.[13]  The court explicitly stated that Rule 48 was a claims-processing rule only, and since both sides had agreed to relief under that rule in the district court, the motion was properly granted.[14]

In short, you plainly have the authority to agree to the relief we seek, and if you do Judge Dearie will just as plainly have the authority to grant it and to resentence Haynes on the remaining counts.

D.    *Clemency*

The foregoing authorities refute the contention that the only avenue of relief for Haynes is clemency.  In any event, no one who knows anything about the clemency process can seriously assert that it is realistically available to Haynes.[15]  That would be true even if Barack Obama were still our President.  The pardon process under him was overwhelmed by applications from drug trafficking offenders, and most of the small percentage of applicants who received clemency had committed a drug trafficking offense.[16]  Though a small number defendants with § 924(c) convictions obtained relief, their underlying offenses were drug trafficking offenses, not robberies.  In short, despite his indisputably excessive sentence, and the stark fact that the only

---

[11]    467 F.3d at 788.

[12]    *Id.* at 787.

[13]    *Id.* at 788 ("The question here is simply whether jurisdiction under § 3231 is available if a Rule 48 motion is made after sentencing and appeal.  Though perhaps not obvious, the answer appears to be yes.").

[14]    *Id.* at 789.

[15]    Then-U.S. Attorney Loretta Lynch agreed with that assertion in *U.S. v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014).  Indeed, it caused her to reverse her initial decision not to agree to a vacatur of two of Holloway's § 924(c) convictions.  She then agreed to precisely the relief we seek here.

[16]    United States Sentencing Commission, *An Analysis of the Implementation of the 2014 Clemency Initiative*, 9 (September 2017), https://www.ussc.gov/research/research-reports/analysis-implementation-2014-clemency-initiative.  Though the "DOJ ultimately did make recommendations to the President on over 4,400 petitions from offenders convicted of offenses other than drug trafficking[,] [t]hose petitions remained pending at the end of President Obama's term in office." *Id.* at 10.

Hon. Richard P. Donoghue                                              May 17, 2018

reason it was imposed was Haynes exercised his right to trial, Haynes has no shot at clemency. Your authority to reduce the onerous trial penalty imposed on him is his only remaining hope.

### E.   *Recidivism*

To the extent you may have concerns about recidivism, please bear in mind first that Haynes had no criminal history prior to this arrest. Also, studies by the United States Sentencing Commission have demonstrated that "[o]lder offenders [a]re substantially less likely than younger offenders to recidivate following release."[17] Given that Haynes is 50 years old, the likelihood of him recidivating if released is not high. It can be diminished even further by a careful planning of his return to the community with the assistance of the Probation Department.

In addition, increased education reduces recidivism across almost all categories of offenders—"[e]very education group experienced a decline in rearrest rate as age increases."[18] Haynes has received his high school diploma, and he completed the Nurses' Aide Certificate Program offered by Murry Bergtraum High School. While incarcerated, Haynes has completed a dozen education courses, logging hundreds of hours in them. Given his age, and his individual progress while incarcerated, Haynes is not likely to reoffend if released.

### F.   *Haynes Is Deserving of Mercy*

Finally, as set forth in our letter to Mr. Capers, Haynes is deserving of mercy. He has had only a mild disciplinary history in his 25 years in custody, and he has a substantial inmate education transcript. Haynes has also developed a strong faith and spirituality, which he tries to spread to others to encourage them to live positively, and he has the love and support of his family, which is committed to helping him upon release.

### G.   *Conclusion*

When this firm started the *pro bono* project that has resulted in this application, our team received requests from hundreds of inmates serving excessive sentences due to stacked § 924(c) counts. From that group, we carefully selected a small number of clients (only slightly more than a dozen so far) who received fundamentally unjust prison terms, have demonstrated genuine personal growth in prison, and have no chance of receiving clemency. The court in *Holloway* anticipated that the power we ask you to exercise here would be used very sparingly, to remedy only truly unjust sentences. This is such a case. Kevin Haynes committed these crimes when he

---

[17]   United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders*, 3 (December 2017), https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders [hereinafter "Effects of Aging on Recidivism"]; *see also* United States Sentencing Commission, *Recidivism Among Federal Offenders: A Comprehensive Overview* 23 (March 2016), https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-comprehensive-overview [hereinafter "Recidivism Among Federal Offenders"] ("For each age grouping [], the older the age group, the lower the rearrest rate."); United States Sentencing Commission, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* 2 (March 2017), https://www.ussc.gov/research/research-reports/criminal-history-and-recidivism-federal-offenders ("As noted in the *Recidivism Overview Report*, recidivism correlates strongly with both criminal history and age at release.").

[18]   Effects of Aging on Recidivism, *supra* note 17, at 24.

Hon. Richard P. Donoghue                                                                    May 17, 2018

was only 23 years of age, and George H.W. Bush was our President. Though the amounts stolen were relatively small, and, thank goodness, no one was physically injured, he was guilty of serious violent crimes and deserved to be punished. But even people who are actually guilty of violent crimes can be subjected to injustice. Haynes has been punished orders of magnitude more severely than the government thought was necessary when it offered him a plea bargain. Please make the choice to allow Judge Dearie to give him back the next 16 years of his life.

As mentioned above, we would appreciate the opportunity to meet with you personally in support of this request and to answer any questions you may have. We would also welcome a conference with Judge Dearie, who we hope will be supportive of our application, if you believe that might be useful. Finally, to the extent you harbor any doubts, we encourage you to writ in Haynes himself to see the man he has become over the past quarter-century. He is by no means perfect, and he has naturally had moments of genuine frustration and despair as a result of his bone-crushing sentence, but he is a living, breathing man with a loving family who has tried to better himself, and he has succeeded. He truly deserves the mercy we ask you to show.

Very Truly Yours,

David Sarratt

cc:    Hon. Raymond J. Dearie
       United States District Court
       Eastern District of New York
       225 Cadman Plaza East
       Brooklyn NY 11201

7

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                              :

THE UNITED STATES OF AMERICA,         :

                    Plaintiff,          :

              -against-            :      93-cr-1043-RJD

                                   :

KEVIN HAYNES,                     :

                  Defendant.       :

                                   :
-------------------------------------------------------------------x

 

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS COUNT 8 OF THE SUPERSEDING INDICTMENT
PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 48</u>**

Case 1:93-cr-01043-RJD   Document 89-1   Filed 01/07/19   Page 2 of 18 PageID #: 44

## TABLE OF CONTENTS

Page

INTRODUCTION...................................................................................................... 1

I. FACTUAL BACKGROUND ............................................................................... 2

II. PROCEDURAL POSTURE ............................................................................. 3

    A.    The Court Has Jurisdiction under 18 U.S.C. § 3231 to Grant a
    Motion to Dismiss Count 8 Pursuant to Federal Rule of Criminal
    Procedure 48 upon the Government's Consent .................................................... 4

    B.    Rule 48 Has Been Used in Analogous Circumstances to Remedy
    an Unjust Conviction or Sentence, as Matter of Prosecutorial
    Discretion, Even after a Conviction is Final ........................................................ 5

III. DISCUSSION ................................................................................................... 8

    A.    Recent Policy Changes Have Recognized the Inherent Unfairness
    in § 924(c) Stacking and Eliminated the Practice Prospectively ........................... 9

    B.    Haynes Is Not a Likely Candidate for Clemency ................................................ 10

    C.    Numerous Other Courts Have Granted the Relief Sought in This
    Motion and Resentenced Defendants Serving Unreasonably Long
    Sentences Resulting from Stacked § 924(c) Charges .......................................... 11

CONCLUSION ...................................................................................................... 15

## EXHIBITS

Exhibit A – Letter to United States Attorney dated January 9, 2017

Exhibit B – Letter to United States Attorney dated May 17, 2018

Exhibit C – Transcript from December 13, 2018 Status Conference

Case 1:93-cr-01043-RJD   Document 89-1   Filed 01/07/19   Page 3 of 18 PageID #: 45

## INTRODUCTION

Defendant Kevin Haynes ("Haynes"), by and through undersigned counsel, submits this memorandum of law in support of his motion to dismiss Count 8 of the superseding indictment in the above-captioned case pursuant to Federal Rule of Criminal Procedure 48 ("Rule 48"). For the reasons set forth below, and in the letters previously submitted to the Court and the government in this matter,[1] Haynes respectfully requests that the Court issue an order (i) granting leave of court for the government to consent to dismissal of Count 8 of the superseding indictment and (ii) urging the government to exercise its discretion to do so in this case. Upon the government's consent, Haynes requests that the Court vacate his conviction under Count 8 and reduce his sentence to 318 months, resulting in his immediate release from prison with good time credit.

As discussed at the December 13, 2018 status conference, there appears to be consensus among the parties that the sentence Haynes received was excessive and unjust, but the government has expressed reservations about whether there is a procedurally proper vehicle for granting the relief we seek. As Your Honor stated at the conference, however, "if there is a recognition that there's a wrong here that should be corrected . . . [and] I have a feeling there's some sense that this sentence is woefully excessive[,] then there's got to be a way to resolve it. . . . [I]f there's injustice it has to be corrected." Status Conf. Tr. at 10, ¶¶ 18-24 (Dec. 13, 2018) (Ex. C). The purpose of this motion is therefore to seek an order granting leave of court to proceed under Rule 48, thus confirming the government's legal authority to agree to the relief

---

[1] The background and context for this application are set forth more fully in two prior letters sent to the United States Attorney on January 9, 2017 and May 17, 2018, as well as one letter filed with the Court on November 30, 2018. The letters to the United States Attorney are attached hereto as Exhibits A & B. A copy of the transcript from the status conference before Your Honor on December 13, 2018 is also attached as Exhibit C.

1

Haynes requests.  Haynes also seeks the Court's direct encouragement of the government to exercise its discretion to move to dismiss Count 8 in this case.

## I. FACTUAL BACKGROUND

Kevin Haynes grew up in Brooklyn.  He completed high school in 1987 and a Nurses' Aide program in 1988.  He was consistently and gainfully employed until 1992, when he lost his job as a truck driver due to an accident.  In 1993, Haynes was arrested for his participation in four bank robberies in Queens.  Nobody was injured during the robberies, and Haynes had no criminal history prior to this arrest.  A few weeks later, Haynes was indicted on six charges: one conspiracy count, four counts of bank robbery, and a single count for violating 18 U.S.C. § 924(c).  Ind., ECF No. 7.  The indictment made clear that the government was aware that guns were used in three of the four robberies, but charged only a single § 924(c) violation.  Ind. at 2, ECF No. 7.

A few weeks before trial was scheduled to begin, the government offered Haynes a plea agreement that would require him to plead guilty to one bank robbery count and the sole § 924(c) count.  By the government's estimation, the resulting guidelines range would be 33 to 41 months for the robberies, followed by the mandatory consecutive five-year sentence under § 924(c). Haynes declined the offer and decided instead to exercise his constitutional right to a jury trial. Days later, on December 29, 1993—two weeks before the trial began—the government responded by superseding the indictment and adding *two additional counts* under § 924(c).  Sup. Ind., ECF No. 19.  On the new charges alone, Haynes faced an additional 40 years in prison.

On January 21, 1994, the jury found Haynes guilty on all counts.  Cal. Entry, ECF No. 30.  He was sentenced to a 558-month prison term—18 months to run concurrently on Counts 1-5 (the conspiracy count and the substantive bank robbery counts) plus 60 months, 240 months,

Case 1:93-cr-01043-RJD Document 89-1 Filed 01/07/19 Page 28 of 18 PageID #: 204

and 240 months to run consecutively to the 18 months and to each other on Counts 6, 7, and 8, respectively (the three § 924(c) counts). J., ECF No. 53. His ultimate sentence was 457 months longer than the top of the guidelines range recommended by the government in its pretrial plea offer, and more than 86 percent of the sentence derived from the two § 924(c) counts that were added in direct response to Haynes's decision to go to trial. As of this filing, Haynes has served over 304 months in prison, the equivalent (taking into account "good time" credits) of a 350-month term. Had the government chosen to add only one stacked § 924(c) count as a penalty for Haynes's decision to go to trial instead of two, Haynes would have been released nearly three years ago.

In stark contrast with the draconian sentence Haynes received stands the sentence imposed on his co-defendant, Virgil Rivers—a man 20 years his senior with a significant criminal history.[2] Because Rivers pled guilty, he had to face only one § 924(c) count, and he was sentenced to 10 years in prison, less than a quarter of the 46.5 years Haynes received.

## II. PROCEDURAL POSTURE

No reasonable observer could argue that the sentence Haynes received was "sufficient, but *not greater than necessary*" to achieve the purposes of punishment in our criminal justice system.[3] Mandated by operation of law due to the now impermissible practice of "stacking"

---

[2] At the time of the relevant offenses, Haynes had no criminal history, and Rivers had four prior robbery convictions. *See United States v. Rivers*, 50 F.3d 1126, 1127 (2d Cir. 1995).

[3] Pursuant to 18 U.S.C. § 3553, "The court shall impose a sentence sufficient, but not greater than necessary, . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Case 1:93-cr-01043-RJD   Document 89-1   Filed 01/07/19   Page 6 of 18 PageID #: 48

§ 924(c) counts as punishment for the exercise of his right to trial, Haynes's sentence, on its face, is a miscarriage of justice. The government has not suggested otherwise.

As other courts have recognized, there is a procedural vehicle through which the Justice Department and the courts together can ameliorate these patently unjust sentences. With leave of court, the government can move under Rule 48 to dismiss Haynes's final § 924(c) count, thus allowing the Court to vacate his conviction on that count. The resulting sentence would still be excessive; Haynes has already served an effective sentence far longer than three times the upper end of the Guidelines range he would have faced had he pled guilty. But it would give back to Haynes 15 years of his life, and he has prepared himself admirably to succeed upon his release.

    A.    <u>The Court Has Jurisdiction under 18 U.S.C. § 3231 to Grant a Motion to Dismiss Count 8 Pursuant to Federal Rule of Criminal Procedure 48 upon the Government's Consent</u>

Rule 48 of the Federal Rules of Criminal Procedure provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48. Unlike other sections of the rules, it sets forth no temporal limitations on the government's exercise of that discretion or on the Court's authority to grant leave for the government to do so. The text of the rule contains no procedural landmarks beyond which the government's discretion ceases to exist, such as post-conviction or exhaustion of appeals. A plain reading of the rule thus confers upon the government the necessary authority to dismiss the third § 924(c) count against Haynes, with leave of court, irrespective of the case's procedural posture.

It is likewise clear that the district court retains the necessary jurisdiction to hear and decide such a motion. Pursuant to 18 U.S.C. § 3231's general grant of jurisdiction over "all offenses against the laws of the United States," the sentencing court retains some measure of jurisdiction over a criminal prosecution even after conviction and appeal. *See e.g.*, *Rice v.*

*Rivera*, 617 F.3d 802, 809-811 (4th Cir. 2010), citing *United States v. Smith*, 467 F.3d 785, 788 (D.C. Cir. 2006) ("[D]istrict courts retain some reservoir of jurisdiction—distinct from the rules of criminal procedure themselves—to entertain motions after final judgment."). Because this Court sentenced Haynes to his original term of imprisonment, it also retains jurisdiction over motions concerning Haynes' case even after conviction and appeal. Thus, if the government consents to dismissal under Rule 48, the Court would be fully empowered to—and indeed obligated to on this record—dismiss Count 8 and resentence Haynes to a more equitable term of imprisonment. *See Rinaldi v. United States*, 434 U.S. 22, 30-32 (1977) (finding that the district court abused its discretion in refusing to grant the government's Rule 48(a) motion because the decision to terminate the prosecution in that case was "motivated by considerations which cannot fairly be characterized as 'clearly contrary to manifest public interest.'") (internal citations omitted); *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 141 (2d Cir. 2017) (suggesting that "any authority a court might have to deny a Rule 48(a) motion would be limited to cases in which dismissal is 'clearly contrary to manifest public interest.'") (quoting *Rinaldi*); *United States v. Manbeck*, 744 F.2d 360, 372 (4th Cir. 1984) ("[A] trial court's discretion to deny the government's motion to dismiss an indictment is limited to situations where dismissal is 'clearly contrary to manifest public interest.'") (quoting *Rinaldi*).

B.  Rule 48 Has Been Used in Analogous Circumstances to Remedy an Unjust Conviction or Sentence, as Matter of Prosecutorial Discretion, Even after a Conviction is Final

United States Attorneys in other districts have already exercised their authority pursuant to Rule 48 under directly analogous circumstances in order to remedy indefensibly long sentences like the one Haynes is currently serving. In *Rice v. Rivera*, 617 F.3d 802 (4th Cir. 2010), Petitioner Rice filed a habeas petition under 28 U.S.C. § 2241 attacking the validity of his

Case 1:93-cr-01043-RJD  Document 89-1  Filed 01/07/19  Page 8 of 18 PageID #: 56

conviction following the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), which narrowed the meaning of "use" of a firearm under 18 U.S.C. § 924(c). The United States Attorney for the District of South Carolina initially agreed with Rice that the conviction should be vacated (noting that the habeas motion had been properly brought), and separately moved the Court, pursuant to Rule 48, to vacate Rice's § 924(c) conviction. After the district court denied both motions, the government changed its position, asserting that there was no jurisdictional basis for the habeas motion, but nonetheless did not seek to withdraw its Rule 48 motion. Although the Fourth Circuit held that the district court did not have jurisdiction to entertain the habeas motion for technical reasons,[4] it reversed the denial of the Rule 48 motion and remanded for the motion to be granted. In doing so, the Fourth Circuit first held that the district court had jurisdiction over the Rule 48 motion pursuant to 18 U.S.C. § 3231. It then went on to specify that such jurisdiction remains with the district court even after conviction and appeal, holding that "[a]lthough the federal courts have rarely been asked to confront the issue, we are constrained to agree that some measure of jurisdiction over a criminal prosecution remains with a sentencing court even after conviction and appeal." *Rice*, 617 F.3d at 807-09.

The *Rice* court next addressed the precise issue the government has raised here, namely, whether Rule 48 is an appropriate vehicle for dismissal after a conviction and unsuccessful direct appeal. Applying the rubric established by a series of Supreme Court cases, the court held that Rule 48 is a "claims-processing" rule, not a jurisdictional one, and thus any limitations on its applicability in the post-conviction setting would have to be raised by the parties. Because neither party challenged the use of the Rule, there was no basis for determining that it was an

---

[4] Namely, the Fourth Circuit noted that a § 2241 habeas motion was only available if a § 2255 motion proved inadequate or ineffective to test the legality of detention, which Rice had not established. *Rice*, 617 F.3d at 807-08.

inappropriate vehicle for the relief sought, and the Fourth Circuit therefore held that the district court had abused its discretion by not granting the government's motion to dismiss the conviction. *Id.* at 811-12.

The D.C. Circuit reached the same conclusion on these two main questions in *United States v. Smith*, 467 F.3d 785, 789-90 (D.C. Cir. 2006), one of the cases on which the Fourth Circuit relied in *Rice*. That case involved a Rule 48 motion presented long after a conviction had become final, which was granted by the district court. For unusual procedural reasons that are not relevant here,[5] the defendant appealed, and argued that the district court lacked the power to vacate a conviction and sentence that had become final. Relying on the same Supreme Court decisions cited by the Fourth Circuit in *Rice*, the D.C. Circuit rejected that argument and held that, because Rule 48 was a claims-processing rule only, the agreement of both sides in the district court was sufficient to waive any subsequent objections about the propriety of Rule 48 as a vehicle for dismissal.[6] *Smith*, 467 F.3d at 787-89 ("The question here is simply whether jurisdiction under § 3231 is available if a Rule 48 motion is made after sentencing and appeal. Though perhaps not obvious, the answer appears to be yes.").

---

[5] In *Smith*, the defendant initially supported the government's motion to dismiss one of his § 924(c) counts pursuant to Rule 48, allowing the court to vacate his long-final, mandatory 30-year sentence under the statute. When his subsequent request for resentencing was denied, however, he appealed on the theory that if his 30-year sentence were reinstated, it would allow Smith to file a habeas petition, which would result in resentencing with the benefit of subsequent developments in the law.

[6] Even assuming Rule 48 contains any "implicit time limits on vacatur" or implicates § 3582 and the conditions for modifying a sentence under Rule 35, those limitations are not a bar to relief here. *Smith*, 467 F.3d at 788. With regard to implicit limitations within Rule 48, any such objections would be waivable invocations of a claims-processing rule. With regard to the potentially non-waivable, jurisdictional implications of § 3582, the *Smith* court explicitly set out an alternative procedural path that "clearly [would] have been free of jurisdictional error," through Rule 33. *Smith*, 467 F.3d at 789. If the government prefers that an unopposed Rule 33 motion precede the Rule 48 motion for the avoidance of doubt about whether such a jurisdictional hurdle exists, Haynes will promptly file such a motion.

As the above cases demonstrate, there is ample precedent approving both the post-conviction use of Rule 48 on consent of the parties and the jurisdictional authority of the courts to hear and grant such a motion under § 3231.[7] It is true that the cases do not all reach the question of whether Rule 48 on its own would permit dismissal after a conviction is final if such a motion were contested, and that some courts have noted the absence of any authority on that point.[8] But the available precedent uniformly acknowledges that if the parties agree to seek the dismissal of a final conviction under Rule 48, the district court is empowered to grant that relief, and that decision will not be disturbed on appeal. Accordingly, there is no question that the government is fully empowered to do the right thing here—just as it was when it did the right thing with respect to the other deserving defendants in the cases cited above and in our letters to the government—and by doing so permit the court to bring a measure of justice to Kevin Haynes.

### III. DISCUSSION

The practice of "stacking" § 924(c) charges has received virtually unanimous condemnation for many years. Finally, just last month, Congress passed and the President signed the First Step Act, which eliminates the practice of stacking altogether, after the

---

[7] *See also United States v. Clark*, 816 F.3d 350, 353 (5th Cir. 2016) (in which the Fifth Circuit noted that the district court had dismissed a final conviction under § 924(c) pursuant to the government's Rule 48 motion, based both on the shift in the legal framework surrounding the language of § 924(c) post *Bailey* and on the government's acknowledgement that the defendant's sentence under the other four counts more than adequately punished him for his crimes.)

[8] *See Rice*, 617 F.3d at 810 ("[W]e need not resolve whether Rule 48 contains some limitations that could preclude its use in th[e post-conviction] context"); *Smith*, 467 F.3d at 789 (declining to reach "the non-jurisdictional question of whether Rule 48 alone can properly be used to vacate a final conviction"); *but see Korematsu v. United States*, 584 F. Supp. 1406, 1411 (N.D. Cal. 1984) ("The court finds no authority for the proposition that a Rule 48(a) motion may be made long after the prosecution has come to rest"); *Hirabayashi v. United States*, 828 F.2d 591, 607 (9th Cir. 1987) ("There is no precedent for applying Rule 48 to vacate a conviction after the trial and appellate proceedings have ended").

Sentencing Commission, the Judicial Conference of the United States, the President of the United States, and Senate leaders on both sides of the aisle repeatedly urged the amendment of the statute to prevent the grossly disproportionate sentences it was producing. The courts, too, have long recognized the injustice in stacked § 924(c) sentences, and have taken steps in response to motions like the one presently before this Court to rectify the truly excessive prison terms the practice produced.

    A.    <u>Recent Policy Changes Have Recognized the Inherent Unfairness in § 924(c) Stacking and Eliminated the Practice Prospectively</u>

On December 21, 2018, the President signed into law the First Step Act, a senate-initiated criminal justice reform effort that, among other things, finally eradicated the "stacking" issue that plagued the enforcement of § 924(c). Specifically, Section 403 of the Act modified the language of § 924(c) by striking "second or subsequent conviction under this subsection" and replacing it with "violation of this subsection that occurs after a prior conviction under this subsection has become final." S. Con. Res. 756, 115th Cong. § 403 (2018) (enacted).[9] As revised, multiple convictions under § 924(c) cannot be obtained in the same case as they were with Haynes, so the vastly exaggerated mandatory minimums associated with a "second or successive" conviction will be triggered only by a truly "subsequent" conviction. Unlike other elements of the First Step Act, however, the revisions to § 924(c) are not retroactive. Section 403(b) of the Act—titled "Applicability to Pending Cases"—states that "[t]his section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense had not been imposed as of such date of enactment." *Id.* § 403(b).

---

[9] Notably, the fact that this change was titled a "Clarification of Section 924(c)" suggests that, even as originally written, § 924(c) was intended to be a truly recidivist statute.

Because Haynes was sentenced under § 924(c) more than 25 years ago, the First Step Act does not empower the Court, on its own or solely on the motion of Haynes himself, to alter his sentence.  But it could not be clearer that Haynes suffered precisely the same injustice that Congress and the President made sure could no longer occur in future cases, and that the government and the Court retain the authority under Rule 48 and 18 U.S.C. § 3231 to diminish that injustice in this case.

B.    Haynes Is Not a Likely Candidate for Clemency

Both in response to the initial letter sent on behalf of Haynes and during the most recent status conference before the Court, the government argued that there was no need for judicial intervention because Haynes could simply apply for clemency.  Specifically, the government stated that "Mr. Haynes is free to make a request to the executive for [ ] clemency, but that is power that is committed structurally to the President and not to the United States Attorneys." Ex. C, at 11, ¶¶ 2-5.

That suggestion, however, both ignores the Executive's general criteria for successful clemency petitions, and misses the point.  As an initial matter, by virtue of the multiple § 924(c) convictions that underlie these inequitable sentences, Haynes, and others like him, would certainly be disqualified as candidates for pardon or commutation.[10]  That stark reality no doubt

---

[10] In *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014), discussed in Section III.C, Francois Holloway engaged in very similar criminal conduct, resulting in multiple convictions under § 924(c).  The United States Attorney at the time, Loretta Lynch, initially declined the court's request to vacate one or more of Holloway's § 924(c) convictions, indicating that Holloway could petition for clemency.  The court in that case pointed out that (even in that administration, which adopted a far more liberal use of the clemency power) the DOJ's own criteria likely eliminated that potential avenue for relief.  United States Attorney Lynch later withdraw her objection and agreed to vacate two of Holloway's § 924(c) counts.

accounted for the Court's "profound disappoint[ment]" at the government's assertion that presidential clemency was the proper avenue for relief in this case. Ex. C, at 11, ¶¶ 6-22.

But even if clemency were an option, it would be a track for seeking out mercy *outside* of the criminal justice system; the existence of that potential mechanism for extra-judicial relief does not imply or suggest in any way that there should be no mechanism for correcting an injustice within the criminal justice system itself. And where a procedural vehicle for seeking relief exists, as multiple Circuits have agreed Rule 48 quite explicitly does here, criminal defendants should be entitled to avail themselves of that path, and the government should faithfully exercise its prosecutorial discretion to achieve the interests of justice, regardless of the possibility (even if it existed) of seeking relief through other channels.

The government is not divested of its opportunity to do justice under Rule 48 when a conviction becomes final. The request we make here is that the government independently evaluate Haynes' situation today—in light the crimes he committed, the amount of time he has already served for those crimes, and the man he has become more than a quarter century later—and exercise its discretion to remedy a clearly unjust situation.

C.  <u>Numerous Other Courts Have Granted the Relief Sought in This Motion and Resentenced Defendants Serving Unreasonably Long Sentences Resulting from Stacked § 924(c) Charges</u>

A large and growing number of United States Attorneys and courts have worked together in other cases to correct unfair sentences based on stacked § 924(c) counts like the one Haynes is serving. The first instance was in this district in *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014). Holloway was convicted in 1995 on three carjacking and three § 924(c) counts—after rejecting a plea offer that would have resulted in the dismissal of two of those counts—and was sentenced after trial to 57 years and 7 months. The stacked § 924(c) charges

accounted for 45 years of his sentence. In 2012, Holloway filed a *pro se* motion to reopen his 28 U.S.C. § 2255 proceeding. The sentencing judge in that case recognized the need for relief, and therefore issued an order "request[ing] that the United States Attorney consider exercising her discretion to agree to an order vacating two or more of Holloway's 18 U.S.C. § 924(c) convictions." *Holloway*, 68 F. Supp. 3d at 314. The government, as here, initially declined to exercise its discretion to allow for resentencing on the grounds that executive clemency was the proper vehicle for seeking such relief. After the court pointed out in a subsequent written order that the DOJ criteria for clemency would almost certainly disqualify a defendant like Holloway, however, the government reconsidered, withdrew its objection, and agreed to vacate two of Holloway's § 924(c) counts. *Holloway*, 68 F. Supp. 3d at 315-17.

Following that decision, a number of other courts and United States Attorneys across the country have followed suit. The *Holloway* case came to stand for a simple proposition: Even when there is no technical defect in the conviction that has mandated an unjust sentence, a United States Attorney "can do justice by the simple act of going back into court and agreeing that justice should be done." *Id.* at 311. In the Eastern District of Pennsylvania, for example, Judge Jan DuBois relied on *Holloway* in asking the United States Attorney in Philadelphia to agree to withdraw the "851 enhancement" that mandated a life sentence in *United States v. Trader*, No. 04-680-06, 2015 WL4941820, at *47 (E.D. Pa. Aug. 19, 2015). In the Eastern District of Oklahoma, Judge Frank Seay—who had imposed a mandatory life sentence on defendant Rivera in *United States v. Rivera*, Nos. 83-00096-01-CR & 83-00138-02-CR (E.D. Okla. Sept. 15, 2015) pursuant to 21 U.S.C. § 848(b)—was able to resentence the defendant when the United States Attorney in that district agreed to vacate that mandatory sentence, relying expressly on *Holloway* in his papers. And in 2016, Judge Graham Mullen in the Western

District of North Carolina issued an order directing the government to respond to a "*Holloway* request" in *United States v. Tate*, No. 3:94-CR-147-GCM-2, Order, ECF No. 149 (W.D.N.C. Apr. 4, 2016). Tom Aaron Tate, who was sentenced in 1995 to a 960-month prison term based on a mandatory 780-month sentence for stacked § 924(c) convictions, filed a *pro se* application seeking relief based on the *Holloway* case. The government consented to vacating the stacked convictions, and Judge Mullen resentenced Tate to a term of 188 months. *See also United States v. Williams et al.*, No. 6:12-cr-00008-DLC-1, J., ECF No. 264 (D. Mont. Feb. 1, 2013) (dismissing three out of four § 924(c) counts on consent of the government); *United States v. Canfield et al.*, No. 1:03-cr-00074-SPW-2, Am. J., ECF No. 277 (D. Mont. Oct. 27, 2010) (dismissing all but two counts of conviction, including seven stacked § 924(c) counts, on motion of the government).

One common thread in nearly all of these cases is that, although the government ultimately consented to the relief sought, the judges played a critical role in persuading the government to do so by unambiguously opining on the importance of this type of ex-post review of patently excessive sentences. In *United States v. Washington*, No. 1:11-cr-00605-RJS-2, Order, ECF No. 109 (S.D.N.Y. July 31, 2014), for example, Judge Richard Sullivan in the Southern District of New York forcefully endorsed the approach taken in *Holloway* and asked United States Attorney Preet Bharara to agree to vacate a § 924(c) conviction.

The defendant in that case—Randy Washington, who was charged with a variety of robbery, narcotics, and firearm offenses—rejected the government's 10-year plea offer, was found guilty on all counts at trial, and faced a mandatory minimum sentence of 52 years in prison due, in large part, to stacked § 924(c) convictions. Though Judge Sullivan denied Washington's direct legal challenges to his convictions, he acknowledged the pervasive problem of utilizing

harsh mandatory minimum sentences as trial penalties, writing "a serious question posed by the facts of this case—and perhaps the elephant in the room—is the fairness of the fifty-two years mandatory minimum sentence that Defendant is facing because he opted to forego a ten-year plea offer and go to trial." *Id.*, Order, ECF No. 109. Judge Sullivan went on to write that "[n]ot all that is constitutional is just and it is difficult to see how a forty-two year trial penalty for a twenty seven year old defendant who is not alleged to have fired a weapon, much less kill anyone, could be 'the right thing'—no matter how that vague term is defined." *Id.* He concluded by observing that "the Court is left with the definite impression that a fifty-two year sentence is unnecessary and unjust. Nevertheless in this regard, the Court is powerless to do more than admonish, and can merely ask that the prosecutors involved in this case—at all levels—**consider whether this is a sentence and an exercise of prosecutorial discretion worthy of the public's trust and confidence.**" *Id.* (emphasis added).

That is precisely the question posed by this motion, and that Haynes respectfully asks the Court to put to the government. In *Washington*, the United States Attorney listened, and, on December 18, 2014, moved to dismiss one of the § 924(c) counts. *Id.*, Nolle Prosequi, ECF No. 129. As Judge Sullivan's request itself makes clear, the government retains the prosecutorial discretion to do justice here, and has the obligation to exercise that discretion in a way that is "worthy of the public's trust and confidence." *Id.*, Order, ECF No. 109. Haynes makes this motion relying on the government to do justice in his case as well.[11]

---

[11] If the government has concerns regarding Haynes's pending second or successive §2255 petition pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015) and its progeny, Haynes would agree to withdraw his pending motion upon the government's agreement to support the relief sought in this motion.

## CONCLUSION

Kevin Haynes was 23 when he was incarcerated. He had no criminal history and has already served over 25 years in prison, more than half his life, on this case. But he is still very much still alive, and has put his time to the best possible use, turning himself and his life around. It is too late to correct the injustice of his excessive sentence but it is not too late to diminish it. Rule 48 provides clear legal authority for the government and the Court, together, to grant the that relief here.

Although the path of justice is not always clear, it is brightly illuminated in this case. The government has voiced a concern about other former defendants seeking similar relief, but we respectfully submit that is not a legitimate concern for two reasons. First, and most important, there is no such thing as too much justice. Indeed, having been informed by Congress that it never intended the odious use of § 924(c) charges that led to Haynes's outrageous sentence in the first place, the government should be eager, not reluctant, to listen to applications for relief like the one made here. Second, it is true that acknowledging and exercising the discretion that Rule 48 confers even after convictions have long become final may indeed require the United States Attorney to decide closer cases than this one in the future. But the mere fact that there might be hard cases has never been a good reason not to get the easy ones right, and this is an easy case.

No one can reasonably defend what happened to Haynes in this case simply because he exercised a right the Sixth Amendment guaranteed him. As noted above, Congress has now clearly established that it never intended to permit the type of punishment Haynes received for exercising that right. Moreover, the text of Rule 48 and the cases construing that rule have made it clear that United States Attorneys and sentencing courts have the power to grant the relief we

Case 1:93-cr-01043-RJD   Document 89-1   Filed 01/07/19   Page 18 of 18 PageID #: 60

seek here.  We therefore respectfully ask the Court to grant the government leave of court to

move to dismiss Count 8, and to urge the government to do so, in order that an important, if

belated, measure of justice can be brought to bear on the sentence in this case.


Dated:  New York, New York
        January 7, 2019

                                    Respectfully submitted,

                                    DEBEVOISE & PLIMPTON LLP

                                    By:   /s/ David Sarratt

                                    David Sarratt (*dsarratt@debevoise.com*)
                                    Marisa R. Taney (*mrtaney@debevoise.com*)

                                    919 Third Avenue
                                    New York, New York 10022
                                    Tel #: (212) 909-6000
                                    Fax #: (212) 909-6836

                                    *Attorneys for Kevin Haynes*

# EXHIBIT 4

USP Pollock
1000 Airbase Road,
Pollock, LA 71467

August 14, 2019

### Kevin Haynes (Reg. No. 43015-053) Release Plan

**If released, I plan to live with (*who, where*):**

Although my mother has recently passed, I plan to return to Brooklyn I still intend to work in health care as well as in the field of law

**In order to support myself financially, I plan to (*work plan, job interest*):**

I have many opportunity to support myself financially. I can do carpentry work, construction work, Health care I also can drive a truck and I am currently enrolled in The Black Stone Career Institute to become a licensed paralegal. So that's is another opportunity!

**For community support, I plan to (*family nearby, community engagement*):**

For Community Support I have my stronge Faith in God. I
Also has Some Family and Friends

**Other aspects of my release plan (*if applicable*) include:**

I have many plans. One of them is to Some day get Married And
own my own Sea food salad Business. Because I make A mean Sea
food salad,