DMP:ICR
F. #1992R05463

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                          Docket No. 93-CR-1043 (RJD)

KEVIN HAYNES,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION FOR A REDUCTION IN SENTENCE

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Ian C. Richardson
Assistant U.S. Attorney
    (Of Counsel)

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND .............................................................................................. 2

I.   Conviction And Initial Post-Conviction Proceedings................................... 2

II.  Haynes's Application For Leave To File A Successive Section 2255 Motion ................. 3

III. Haynes's Motion To Dismiss Count Eight Of The Superseding Indictment................. 5

IV.  Haynes's Motion For A Reduction In Sentence ............................................. 5

ARGUMENT ................................................................................................. 7

I.   Haynes Has Not Established "Extraordinary and Compelling" Circumstances Warranting
     A Reduction Of His Sentence ................................................................. 7

     A.  Applicable Law ........................................................................... 8

     B.  The Court Lacks Authority To Decide On Its Own What Reasons Are "Extraordinary
         And Compelling" Enough To Warrant A Reduction In Sentence ............................ 12

         1.  The BOP's Role In Determining Which "Other" Circumstances Qualify As
             "Extraordinary And Compelling" Is Distinct From Its Authority To File A Motion
             To Reduce Sentences............................................................... 13

         2.  The First Step Act Does Not Confer Authority On The Court To Decide For Itself
             What Circumstances Are So "Extraordinary And Compelling" As To Warrant A
             Reduction In Sentence ............................................................. 16

     C.  The First Step Act's Non-Retroactive Amendment To Prohibit "Stacking" Section
         924(c)(1) Charges Is Not An "Extraordinary And Compelling" Circumstance
         Warranting A Reduction In Sentence ..................................................... 19

II.  Haynes Has Not Demonstrated That He Is Not A Danger To The Community, And The
     Court Lacks Sufficient Information To Apply The Section 3553(a) Factors .................. 22

     A.  Haynes Has Not Demonstrated That He Is Not A Danger To The Community........ 22

     B.  The Court Should Defer Its Consideration Of The Section 3553(a) Factors.............. 26

CONCLUSION................................................................................................. 27

PRELIMINARY STATEMENT

      Kevin Haynes seeks early release from prison, arguing that First Step Act's amendment to 18 U.S.C. § 924(c)(1) to prevent the "stacking" of multiple § 924(c) counts in a single indictment, constitutes an "extraordinary and compelling" circumstance under 18 U.S.C. § 3582(c)(1)(A)(i), which authorizes the Court to reduce the mandatory minimum term of imprisonment imposed on him in 1994 for his conviction of three "stacked" § 924(c) counts.  (Br. 13-14, Dkt. No. 99-1).  Haynes further argues that the Court should exercise its discretion to reduced his sentence, arguing that his rehabilitation and his "release plan" are sufficient basis for the Court to conclude that he is likely to become a productive and valuable member of society if released.  (Br. 14-19).

      Haynes is wrong.  Although the First Step Act permits Haynes to make a sentence reduction motion, Congress assigned to the U.S. Sentencing Commission—not the courts—the responsibility to identify the "extraordinary and compelling" circumstances that warrant a reduction in sentence.  The Sentencing Commission's applicable policy statement, which is binding on the Court, does not permit the Court to reduce the defendant's sentence based on a subsequent change in the law, or for a defendant's subsequent rehabilitation.

      But even if the Court concludes that Haynes has demonstrated the existence of "extraordinary and compelling" circumstances, Haynes's motion should be denied because he has not demonstrated that he is not a danger to the community, and in any event, the Court should defer its assessment of the 18 U.S.C. § 3553(a) factors until the Bureau of Prisons completes its assessment of Haynes's motion for release.

BACKGROUND

I.      Conviction And Initial Post-Conviction Proceedings

Between July 23, 1991, and February 19, 1992, Kevin Haynes participated in a series of four bank robberies with coconspirator Virgil Rivers in Brooklyn, New York. (Presentence Investigation Report ("PSR") ¶¶ 10-14).  During three of these robberies the two men displayed or pointed handguns at and threatened to shoot bank employees and customers, and during the fourth robbery threatened to shoot employees and customers without displaying firearms.  (Id.).

On December 29, 1993, a grand jury in the Eastern District of New York returned an eight-count superseding indictment charging Haynes in Count One, with conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371, in Counts Two through Four, with armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), in Count Five, with bank robbery, in violation of 18 U.S.C. § 2113(a), and in Counts Six through Eight, with using a firearm during the commission of a crime of violence, namely the armed bank robberies charged in Counts Two through Four, in violation of 18 U.S.C. § 924(c)(1).

On January 21, 1994, following a four-day jury trial, the jury returned its verdict convicting Haynes on all eight counts charged in the superseding indictment.  (PSR ¶¶ 1-8). During the trial, the government presented evidence of four bank robberies committed by Haynes and Rivers between July 1991 and February 1992.  During the first robbery, of a Chase Manhattan Bank in Queens, New York on July 23, 1991, Haynes acted as a lookout by the door and waved a revolver at bank customers and employees with his finger on the trigger while Rivers vaulted over the teller counter to take $5,719 in cash from the tellers' drawers.  (Trial Tr. at 26:11-89:12). During the second robbery, of a Bowery Savings Bank in Brooklyn, New York on September 13, 1991, Haynes similarly stood by the front door brandishing a revolver and, at one point, held the

gun to the bank security guard's back while Rivers collected $11,250 from the tellers' drawers. (Trial Tr. 89:13-94:23, 123:11-143:19, 149:17-239:3). During the third robbery, of a Chemical Bank in Brooklyn, New York on October 21, 1991, Haynes again stood by the front door brandishing a revolver and pointing it around the room at bank customers and employees while Rivers collected $19,968 from the tellers' drawers. (Trial Tr. 94:24-123:10). In the fourth robbery, of a Chase Manhattan Bank in Brooklyn, New York on February 19, 1992, while Rivers collected $5,328 from the tellers' drawers Haynes once again stood by the door, but this time did not display a firearm. (Trial Tr. 239:4-257:8).

On June 6, 1994, the Court sentenced Haynes principally to a total term of 558 months' imprisonment to be followed by a five-year term of supervised release. (See Judgment at 2-3, Dkt. No. 53). On Counts One through Five, the Court sentenced Haynes to concurrent terms of 18 months' imprisonment. (Judgment at 2). On Count Six, the Court sentenced Haynes to a consecutive term of 60 months' imprisonment, and on Counts Seven and Eight, the Court sentenced Haynes to consecutive terms of 240 months' imprisonment on each count. (Id.).

Haynes appealed, and his conviction was affirmed by the Second Circuit on December 19, 1994. See United States v. Haynes, No. 94-1109 (2d Cir. Dec. 19, 1994). The Court denied Haynes's first motion to vacate his conviction pursuant to 28 U.S.C. § 2255 by Memorandum and Order dated November 29, 2004. See Mem. and Order, Haynes v. United States, No. 00-CV-1213 (RJD), Dkt. No. 35 (E.D.N.Y. Nov. 29, 2004).

II.     Haynes's Application For Leave To File A Successive Section 2255 Motion

On June 17, 2016, the Federal Defenders of New York ("Federal Defenders") filed a second motion under § 2255, with the expectation that the petition would "be supplemented at a future date by a brief that more fully sets forth the basis for the requested relief" (Dkt. No. 80-1 at 1), and on June 21, 2016, filed in the Second Circuit a motion for an order authorizing this Court

to consider the successive motion under § 2255.  Motion, <u>Haynes v. United States</u>, No. 16-2041, Dkt. No. 1 at 8 (2d Cir. June 21, 2016).  On June 23, 2016, Haynes filed in this Court a <u>pro se</u> "Memorandum of Law of Points And Authority" in support of his motion under § 2255, arguing in sum and substance that his bank robbery convictions under 18 U.S.C. § 2113(a) and (d) are not crimes of violence under 18 U.S.C. § 924(c) because the definition of "crime of violence" in § 924(c) is unconstitutionally vague under the Supreme Court's decision in <u>Johnson</u>.  <u>See</u> Dkt. No. 81 at 4-9.

On July 21, 2016, the Second Circuit ordered that Haynes's motion for leave to file a successive § 2255 motion be held in abeyance pending the Second Circuit's decisions in <u>United States v. Hill</u>, No. 14-3872 (2d Cir.), and <u>United States v. Barrett</u>, No. 14-2641 (2d Cir.).  <u>See</u> Order, <u>Haynes v. United States</u>, No. 16-2041, Dkt. No. 13 (2d Cir. July 21, 2016), and further ordered "that within 30 days from the filing of decisions in <u>Hill</u> and <u>Barrett</u>, whichever is filed later, the Petitioner shall file a letter brief addressing the impact of those decisions on the pending motion."  The Second Circuit decided <u>Hill</u> on August 3, 2016, <u>see</u> <u>United States v. Hill</u>, 832 F.3d 135 (2d Cir. 2016), and <u>Barrett</u> on September 10, 2018, <u>see</u> <u>United States v. Barrett</u>, 903 F.3d 166 (2d Cir. 2018).

On June 28, 2019, the Supreme Court decided <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), vacated the Second Circuit's judgment in <u>Barrett</u> and remanded the appeal for further consideration in light of <u>Davis</u>, <u>Barrett v. United States</u>, 139 S. Ct. 2774 (2019).  On remand, the Second Circuit issued a new opinion holding that, in light of <u>Davis</u>, conspiracy to commit Hobbs Act robbery is not a crime of violence, and vacated Barrett's § 924(c) conviction predicated on his conviction for Hobbs Act robbery conspiracy.  <u>See</u> <u>United States v. Barrett</u>, 937 F.3d 126, 129 (2d

Cir. 2019).  On September 27, 2019, the Second Circuit issued the mandate.  See Mandate, United States v. Barrett, No. 14-2641, Dkt. No. 311 (2d Cir. Sept. 27, 2019).

Under the schedule set by the Second Circuit, Haynes's letter brief on the effect of Barrett and Hill on his motion for leave to file a successive § 2255 motion was due on Monday, October 28, 2019, and the government's response is due November 12, 2019.  To date, Haynes has not filed any letter brief in the Second Circuit.

III.    Haynes's Motion To Dismiss Count Eight Of The Superseding Indictment

On November 12, 2018, with Haynes's motion for leave to file a successive § 2255 motion still pending in the Court of Appeals, counsel from Debevoise & Plimpton LLP ("Debevoise") filed notices of appearance for Haynes on the docket of his criminal case in this Court (see Dkt. Nos. 86-87), and moved on November 30, 2018, for a status conference in Haynes's long-closed criminal case "to discuss an order vacating one of Mr. Haynes' § 924(c) counts."  (Motion at 2, Dkt. No. 88).  At the status conference on December 13, 2018, counsel from Debevoise asserted that the government could move to vacate a count of Haynes's 1993 indictment and offered to file a motion that would permit the Court to rule that the government had such authority under Federal Rule of Criminal Procedure 48.  (Dec. 13, 2018 Tr. 12:5-11).

The government opposed on February 15, 2019, arguing that the Court lacked jurisdiction to consider Haynes's motion to dismiss the indictment because, by its terms, Rule 48 authorizes only the government to file such a motion, and the government had not done so.  (Dkt. No. 92).  Haynes's motion to dismiss Count Eight of the superseding indictment remains pending.

IV.    Haynes's Motion For A Reduction In Sentence

On August 14, 2019, in an approximately one-page letter titled "Application for Compassionate Release" ("Application") addressed to the Warden of USP Pollock, where Haynes is currently incarcerated, Haynes requested that the Director of the Bureau of Prisons ("BOP")

5

move this Court, under 18 U.S.C. § 3582(c)(1)(A)(i), to reduce his term of imprisonment for

"extraordinary and compelling reasons," namely:

> the passage of the First Step Act in December 2018—in which
> Congress acknowledged that 18 U.S.C. § 924(c) was improperly
> "stacked" in [Haynes's] indictment resulting in an excessive and
> unjust term of imprisonment—and the extensive rehabilitation
> [Haynes has] undergone since being incarcerated.

(Application at 1, Dkt. No. 99-3).  Attached to the Application was a pair of letters written by

Haynes's counsel to the current and former United States Attorney for the Eastern District of New

York (the "Office") requesting that they dismiss a count of his indictment, a copy of Haynes's

motion asking this Court to request that the Office dismiss a count of his indictment, a "Release

Plan" in which Haynes provided a cursory statement of his intentions upon release from prison.

The BOP has advised the government that Haynes's Application is still under review, and that it

may be some time before the BOP finishes assembling relevant records and other materials for

review by the Warden.

On October 3, 2019, Haynes's counsel from Debevoise filed the instant motion

under 18 U.S.C. § 3582(c)(1)(A)(i), seeking a reduction in sentence for the reasons articulated in

his Application to the Warden of USP Pollock.  (Dkt. No. 99-1).  With his motion, Haynes's

counsel also filed a copy of the Application and its attachments, as well as a BOP record identified

as a "Summary Reentry Plan – Progress Report."  Though his motion to file a successive § 2255

motion remains pending, Haynes argues that this Court should find that "extraordinary and

compelling" circumstances authorize a reduction in sentence to time served, and he asks this Court

to exercise its discretion to do so.

ARGUMENT

Haynes argues that the Court has authority under 18 U.S.C. § 3582(c)(1)(A)(i) to reduce his sentence because the First Step Act's amendment to preclude the "stacking" of multiple § 924(c)(1) counts and his rehabilitation during his imprisonment demonstrate "extraordinary and compelling reasons" for his release.  (Br. 7-12).  He further argues that the Court should exercise its discretion to reduce his term of imprisonment to time served because of his rehabilitation and to remedy the unfairness of the lengthy term imprisonment imposed for his "stacked" § 924(c)(1) convictions.  (Br. 13-18).

For the reasons set forth below, § 3582(c)(1)(A)(i) does not authorize the Court to reduce Haynes's term of imprisonment in these circumstances, and even if it did, the Court should defer decision until the BOP completes its assessment of Haynes's Application.

I.     HAYNES HAS NOT ESTABLISHED "EXTRAORDINARY AND COMPELLING" CIRCUMSTANCES WARRANTING A REDUCTION OF HIS SENTENCE

Haynes contends that 18 U.S.C. § 3582(c)(1)(A)(i) authorizes the Court to reduce his sentence of 558 months' imprisonment based on the "extraordinary and compelling" circumstance that the First Step Act has now amended 18 U.S.C. § 924(c)(1)(C) to prevent the "stacking" of § 924(c)(1) counts that was responsible for 540 months of his 558-month term of imprisonment.  Because a non-retroactive change in applicable law has not been recognized by the Sentencing Commission as an "extraordinary and compelling circumstance" warranting a reduction in sentence, and because the Court lacks authority to add to the Commission's list of "extraordinary and compelling" circumstances, Haynes's motion should be denied.

A.     Applicable Law

Title 18, United States Code, Section 3582(c)(1)(A)(i), as amended by the First

Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court
> may not modify a term of imprisonment once it has been imposed
> except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons,
> or upon motion of the defendant after the defendant has fully
> exhausted all administrative rights to appeal a failure of the Bureau
> of Prisons to bring a motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction
> . . .
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Before the First Step Act, a motion for reduction in sentence based on

"extraordinary and compelling reasons" could only be presented by the BOP.  The First Step Act

added authority for a defendant himself to file a motion seeking relief, after exhausting

administrative remedies, or after the passage of 30 days after presenting a request to the warden,

whichever is earlier.  The other relevant provisions of the statute are unchanged.

Even before the First Step Act, the Court, in considering a motion under

§ 3582(c)(1)(A), was bound by the Sentencing Commission's policy statement.  Indeed, Congress

assigned to the Sentencing Commission the responsibility for promulgating

8

> general policy statements regarding application of the guidelines or
> any other aspect of sentencing or sentence implementation that in
> the view of the Commission would further the purposes set forth in
> section 3553(a)(2) of title 18, United States Code, including the
> appropriate use of . . . the sentence modification provisions set forth
> in sections 3563(c), 3564, 3573, and 3582(c) of title 18.

28 U.S.C. § 994(a)(2)(C).  More specifically, Congress assigned the Sentencing Commission the

responsibility to determine what circumstances are sufficiently "extraordinary and compelling" to

warrant a reduction in sentence under § 3582(c)(1)(A):

> The Commission, in promulgating general policy statements
> regarding the sentencing modification provisions in section
> 3582(c)(1)(A) of title 18, shall describe what should be considered
> extraordinary and compelling reasons for sentence reduction,
> including the criteria to be applied and a list of specific examples.
> Rehabilitation of the defendant alone shall not be considered an
> extraordinary and compelling reason.

28 U.S.C. § 994(t).

The Sentencing Commission's policy statement implementing these statutory

directives appears at U.S.S.G. § 1B1.13, and provides that the Court may grant a reduction in

sentence if "extraordinary and compelling circumstances" exist, "after considering the factors set

forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that

"the defendant is not a danger to the safety of any other person or to the community, as provided

in 18 U.S.C. § 3142(g)."

In Application Note 1 to the Sentencing Commission's policy statement, the

Commission identifies the "extraordinary and compelling reasons" that may justify compassionate

release.  The Note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant
> meets the requirements of subdivision (2) [regarding absence of
> danger to the community], extraordinary and compelling reasons
> exist under any of the circumstances set forth below:

9

(A)     Medical Condition of the Defendant.—

(i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)    The defendant is—

    (I)     suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)     Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)     Family Circumstances.—

(i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)     Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

For its part, consistent with Note 1(D), the BOP promulgated Program Statement 5050.50,

available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf, amended effective January

17, 2019, to set forth its evaluation criteria.  The commentary to § 1B1.13 further provides, in

Application Note 5:

> 5. Application of Subdivision (3).--Any reduction made pursuant to a motion by the Director of the Bureau of Prisons for the reasons set forth in subdivisions (1) [extraordinary and compelling reasons] and (2) [regarding absence of danger to the community] is consistent with this policy statement.

Section 3582(c)(1)(A) makes § 1B1.13 binding on the Court by permitting a

reduction in sentence only if "consistent with applicable policy statements issued by the

Sentencing Commission."  See Dillon v. United States, 560 U.S. 817, 827 (2010).   The

Commission's commentary to § 1B1.13 is likewise binding authority on the Court's application

of § 1B1.13, unless the commentary "violates the Constitution or a federal statute, or is inconsistent

with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38

(1993); see also United States v. Pedragh, 225 F.3d 240, 244 (2d Cir. 2000) ("[C]ommentary is

'binding authority,' unless it is inconsistent with the underlying guideline.") (quoting United States

v. Jackson, 60 F.3d 128, 131 (2d Cir. 1995)).

Haynes has the burden to show circumstances establishing his eligibility for a

reduction in sentence.  United States v. Heromin, 2019 WL 2411311, at *2 (M.D. Fla. June 7,

2019) (citing United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (holding that

§ 3582(c)(2) sentence reduction movant "bears the burden of establishing that a retroactive

amendment has actually lowered his guidelines range in his case")).  As the terminology in the

statute makes clear, reduction in sentence is "rare" and "extraordinary."  United States v. Willis,

2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

B.   The Court Lacks Authority To Decide On Its Own What Reasons Are
     "Extraordinary And Compelling" Enough To Warrant A Reduction In Sentence

Haynes does not contend that he satisfies any of the criteria defining "extraordinary and compelling" reasons set out in the Sentencing Commission's commentary to U.S.S.G. § 1B1.13.  Instead, Haynes argues that, after the First Step Act, the Court is free to decide for itself what reasons are sufficiently "extraordinary and compelling" to warrant a reduction in sentence because § 1B1.13 and its commentary are inconsistent with the First Step Act.  (Br. 10-12 & n.6).  Specifically, Haynes argues that

> though the policy statement (and related commentary)—which have not been amended since the passage of the First Step Act—vest the Director of the BOP with the authority to determine when such "other reasons" might warrant a reduction in a particular case, U.S.S.G. § 1B1.13, Application Note 4, that language is now irreconcilable with the revised statute, which permits a defendant to bring a § 3582 motion to the Court without any response from the BOP, and even if the BOP expressly decides that no reasons warrant a reduction of sentence.

(Br. 10-11).  In support of this argument, Haynes relies on the district court's decision in United Staes v. Cantu (which, as discussed below, has been disagreed with by other courts), in which the court reasoned that the commentary to § 1B1.13 is inconsistent with the First Step Act because Application Note 4 "still advises that '[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons,'" and Note 1(D) allows the Director of the BOP to determine what additional circumstances should qualify as "extraordinary and compelling," even though the ability to make a motion is no longer limited to the Director of the BOP.  United States v. Cantu, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) (quoting U.S.S.G. § 1B1.13 cmt. n.4).  The court reasoned that

> if the Director of the BOP were still the sole determiner of what constitutes an extraordinary and compelling reason, the amendment's allowance of defendants' own § 3582(c)(1)(A) motions for reduction of sentence would be to no avail. Such a

reading would contravene the explicit purpose of the new amendments.

Id. at *4.  Thus, the Cantu court concluded that

> U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court. . . . Thus, the correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.

Id. at *5.

1.    The BOP's Role In Determining Which "Other" Circumstances Qualify As "Extraordinary And Compelling" Is Distinct From Its Authority To File A Motion To Reduce Sentences

Haynes and Cantu are correct that Application Note 4 is outdated insofar as it states that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)."  U.S.S.G. § 1B1.13 cmt. n.4. Application Note 4, however, does not define the circumstances that are so "extraordinary and compelling" as to warrant a reduction in sentence.  Instead, in Application Note 4 "[t]he Commission encourage[d] the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1," and went on to state that "[t]his policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law."  Id.  As the Commission made clear when it added Application Note 4 in the 2016 Amendments to the Sentencing Guidelines, "the new commentary is intended to encourage the Director of the Bureau of Prisons to exercise his or her authority to file a motion under section 3582(c)(1)(A) when the criteria in this policy statement are met."  Application Note 4, therefore, has no bearing on the determination of what circumstances are sufficiently "extraordinary and compelling" to warrant a reduction in sentence, and the inconsistency between

13

the First Step Act's amendments to § 3582(c)(1)(A) and Note 4's reference to the motion filed by the Director of the BOP is irrelevant to Haynes's motion.   <u>See</u> U.S. Sentencing Commission Guidelines Manual, Supp. App. C,  Amend. 799 (Nov. 1, 2016).

The real thrust of Haynes's argument, relying on <u>Cantu</u>, is that to permit the Director of the BOP to determine what "other" circumstances are "extraordinary and compelling" in addition to those identified by the Sentencing Commission in Application Note 1(A)-(C), would violate the First Step Act's purpose and intent.   In reaching this conclusion, <u>Cantu</u> placed great weight on the title of § 603(b) of the First Step Act, the provision that modified § 3582(c)(1)(A). <u>Cantu</u> reasoned that because § 603(b) was titled "Increasing the Use and Transparency of Compassionate Release," Pub. L. No. 226-391, § 603, 132 Stat. 5194, 5239 (Dec. 21, 2018), the Commission's Policy Statement no longer describes an "appropriate use" of the amended statute under 28 U.S.C. § 994(a)(2)(C), insofar as it continues give the BOP a role in the determination of what circumstances warrant a reduction in sentence because they are "extraordinary and compelling," <u>see</u> <u>Cantu</u>, 2019 WL 2498923, at *4.

This is wrong.   The First Step Act changed the law so that, in addition to the Director of the BOP, a defendant may now make a motion for reduction in sentence on his own. But the First Step Act did not change anything about how the policy judgments are made regarding what circumstances are sufficiently "extraordinary and compelling" to warrant a reduction in sentence.   Just as before the First Step Act, Congress has specifically assigned the Sentencing Commission the responsibility of determining, as a policy matter, what reasons are sufficiently "extraordinary and compelling" that they warrant a reduction in sentence, <u>see</u> 28 U.S.C. § 994(a)(2)(C), (t), and Congress has made the Commission's policy determination binding on the courts' consideration of motions for a reduction in sentence, <u>see</u> 18 U.S.C. § 3582(c)(1)(A)

14

(authorizing reduction in sentence only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission").

The Sentencing Commission, through U.S.S.G. § 1B1.13 and its commentary, has implemented Congress's command, and has provided, in Application Note 1(D), that "other" "extraordinary and compelling" reasons, as determined by the BOP, not already enumerated in the Guidelines commentary can provide the basis for a defendant's reduction in sentence.  There is good sense in this.  While the Commission is well suited to make recommendations regarding the sentencing of criminal defendants because of its institutional access to a wide range of data and expertise on sentencing, the BOP has significant institutional advantages in addressing policy questions relating to the assessment of federal inmates' rehabilitation, need for specialized medical care, and other factors relating to inmates' conduct in prison after sentencing.  There is nothing inconsistent with the First Step Act in the Commission's decision to expand the scope and availability of sentence reduction motions beyond the enumerated circumstances judged by the Commission to be "extraordinary and compelling," to include the additional circumstances judged by the BOP to be sufficiently "extraordinary and compelling."   As the district court in United States v. Lynn pointed out in rejecting Cantu's analysis:

> while retaining BOP as the arbiter of the residual category may not increase the number of compassionate releases, neither will it reduce them, so the net effect of Section 603(b) [First Step Act] is decidedly to increase the use of compassionate release. There is thus no tension between a legislative purpose to "increase[e] the use" of compassionate release and a policy statement providing for BOP to make the determination as to one kind (out of five) of extraordinary and compelling reasons for such release.

United States v. Lynn, No. CR 89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019).

The defendant's error, and Cantu's, is in conflating the BOP's authority to make a sentence reduction motion with the Sentencing Commission's deference to the BOP in determining

whether "other" circumstances in addition to those identified by the Commission are "extraordinary and compelling." In United States v. McGraw, No. 2:02-CR-00018, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019), one of the cases cited by Haynes (see Br. 11), the court observed that the "policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release," but went on to observe that "courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." McGraw recognized that "[t]here is no reason to believe. . . that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider." Id. Similarly, in Lynn, 2019 WL 3805349, at *4, the district court criticized Cantu for conflating these separate inquiries, noting that "there is no . . . inherent incompatibility between a statute allowing defendants to move for compassionate release and a policy statement allowing BOP a role in determining whether compassionate release is warranted, and thus no basis for deeming the policy statement overridden."

Because the BOP's role under the Guidelines policy statement in determining whether a particular circumstance is "extraordinary and compelling" is different from the BOP's role in filing a motion asserting that "extraordinary and compelling" circumstances warrant a reduction in sentence, the Court should reject Haynes's argument and conclude that the First Step Act's amendment to permit defendants to file such motions, in addition to the BOP, is not inconsistent with the BOP's distinct role in determining whether "other" circumstances are sufficiently "extraordinary and compelling."

> 2. The First Step Act Does Not Confer Authority On The Court To Decide For Itself What Circumstances Are So "Extraordinary And Compelling" As To Warrant A Reduction In Sentence

Even if the Court were to agree with Cantu that the Sentencing Commission's assignment of residual authority to the BOP to determine what "other" circumstances might be

sufficiently "extraordinary and compelling" to warrant a reduction in sentence is inconsistent with the First Step Act, see Cantu, 2019 WL 2498923, at *5 ("U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court."), it does not follow that the Court would step into the shoes of the BOP and inherit the unfettered and unguided discretion the Sentencing Commission assigned to it to decide what "other" circumstances are "extraordinary and compelling," see id. ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.").

   First, the Court's exercise of the considerable discretion to decide the circumstances under which sentenced federal prisoners may be eligible for early release would be plainly inconsistent with Congress's assignment of that policymaking responsibility to the Sentencing Commission, see 28 U.S.C. § 994(a)(2)(C), (t), and would render superfluous the statutory text that binds the Court's discretion to grant sentence reduction motions to the policy statements promulgated by the Commission, see 18 U.S.C. § 3582(c)(1)(A).  Were the Court free to add to the Sentencing Commission's list of enumerated "extraordinary and compelling" circumstances, § 3582(c)(1)(A)'s language binding the Court to the Sentencing Commission's policy statement would have no effect.  As Lynn explained:

> The Cantu Court's ruling depends also on the premise that courts are free to decide that the Commission's policy statement does not reflect an "appropriate use" of Section 3582(c)(1)(A). By its terms, however, Section 994(a)(2)(C) leaves it to the Commission, not the judiciary, to determine what constitutes an appropriate use of the provision, and Section 3582(c)(1)(A) requires courts to abide by those policy statements. If the policy statement needs tweaking in

light of Section 603(b) [of the First Step Act], that tweaking must be
accomplished by the Commission, not by the courts.

Lynn, 2019 WL 3805349, at *4 (internal quotation marks and citations omitted).  Determining the

circumstances under which federal inmates should be eligible for early release is a quintessential

policymaking function that Congress assigned to the Sentencing Commission.  By contrast, it is

the Court's responsibility to decide whether a defendant has established the existence of any of the

"extraordinary and compelling" circumstances identified by the Commission.  Indeed, in Cantu

the court acknowledged the difficulty of deciding whether a particular circumstance is

"extraordinary and compelling" in the absence of an applicable policy statement, observing that

"[v]ery little guidance exists on what constitutes extraordinary and compelling reasons warranting

a sentence reduction under U.S.S.G § 1B1.13 cmt. n.1(D)."  Cantu, 2019 WL 2498923, at *5.

Crafting the policy that dictates which circumstances are sufficiently "extraordinary and

compelling" as to warrant a reduction in sentence is the Commission's responsibility; determining

whether a particular defendant has established the existence of those "extraordinary and

compelling" circumstances is the Court's responsibility.

Second, nothing in the First Step Act, 28 U.S.C. § 994(a)(2)(C), (t), or 18 U.S.C.

§ 3582(c)(1)(A) requires the Sentencing Commission to create a residual, catch-all definition of

"other" "extraordinary and compelling" circumstances in addition to those circumstances

specifically enumerated in Application Notes 1(A)-(C).  Thus, if the Court concludes that

Application Note 1(D) is inconsistent with the First Step Act, Note 1(D) should be stricken from

the Sentencing Guidelines until it can be amended by the Sentencing Commission.  In order to

give effect to Congress's instruction that sentence reductions should be made only consistent with

the Commission's policy statements, the Court would be limited to determining whether the

defendant had established one of the "extraordinary and compelling" circumstances identified in

18

Application Notes 1(A)-(C), it would not be free to devise others on its own.  See Lynn, 2019 WL 3805349, at *4 ("The Commission may well decide that, since BOP is no longer the gatekeeper regarding the filing of motions for compassionate release, neither should it be the gatekeeper regarding the residual category of extraordinary and compelling reasons for compassionate release. Should the Commission so amend its policy statement, the courts will of course be bound by Section 3582(c)(1)(A) to follow the amended version. Until that day, however, the Court must follow the policy statement as it stands.").

Accordingly, because Haynes does not argue that he can establish the existence of any of the "extraordinary and compelling" circumstances identified by the Sentencing Commission, and because the Court lacks the authority to decide for itself what other circumstances are sufficiently "extraordinary and compelling" as to warrant a reduction in sentence, the Court should deny Haynes's motion.

C.     The First Step Act's Non-Retroactive Amendment To Prohibit "Stacking" Section 924(c)(1) Charges Is Not An "Extraordinary And Compelling" Circumstance Warranting A Reduction In Sentence

Haynes argues that Section 403 of the First Step Act, which amended 18 U.S.C. § 924(c)(1)(C) to prevent the "stacking" of multiple § 924(c)(1) charges, in combination with his rehabilitation, represents an "extraordinary and compelling" circumstance warranting a reduction in his sentence, which was based almost entirely on the mandatory minimum terms of imprisonments imposed on him for his conviction on all three "stacked" § 924(c)(1) counts.  (Br. 14-15).  Haynes argues that "the fact that this amendment was titled a 'Clarification of Section 924(c)' makes clear that 924(c) was never intended by Congress to result in sentences like the one

at issue here."  (Br. 14).   Even if the Court were to reach the merits of Haynes's argument, the

Court should reject it because it is inconsistent with the First Step Act, and deny his motion.[1]

At the time Haynes was convicted of the charges on the underlying superseding

indictment, 18 U.S.C. § 924(c)(1)(C)(i) provided, in relevant part, that

> Whoever, during and in relation to any crime of violence . . . uses or
> carries a firearm, shall, in addition to the punishment provided for
> such crime of violence . . . , be sentenced to imprisonment for five
> years . . . . In the case of his second or subsequent conviction under
> this subsection, such person shall be sentenced to imprisonment for
> twenty years . . . .

18 U.S.C. § 924(c)(1)(C)(i) (1994).  The Supreme Court interpreted this language to mandate that

consecutive, enhanced sentences be imposed for each additional § 924(c)(1) count of conviction

charged in the same indictment after the first, a practice that has been referred to as "stacking."

See Deal v. United States, 508 U.S. 129, 132 (1993).

Twenty-five years after the Supreme Court interpreted § 924(c)(1)(C) to mandate

consecutive, enhanced sentences be imposed for "stacked" § 924(c)(1) convictions, Congress

amended § 924(c)(1)(C) in Section 403(a) of the First Step Act "by striking 'second or subsequent

conviction under this subsection' and inserting 'violation of this subsection that occurs after a prior

conviction under this subsection has become final'."  Pub. L. 115-391, § 403(a), 132 Stat. 5194,

5221-22 (Dec. 21, 2018).  Congress made this change in the law applicable "to any offense that

---

[1]      The only other circumstance that Haynes identified in his Application for
Compassionate Release to the Warden of USP Pollock was his rehabilitation, but Congress
and the Sentencing Commission have made clear that a defendant's rehabilitation, standing
alone, does not establish "extraordinary and compelling" circumstances warranting a reduction
in sentence.  See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; see also United States v.
Brown, No. 4:05-CR-00227-1, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019) ("The Court
does not see BOP Progress Reports like this often. One might even call it extraordinary and
compelling. But while Congress largely left 'extraordinary and compelling reasons' undefined,
it made clear rehabilitation, on its own, does not suffice.").

was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."  Id. § 403(b), 132 Stat. at 5222.  Notably, in the very next section of the First Step Act, Congress made other changes to sentencing provisions retroactively applicable through a motion to reduce sentence brought under 18 U.S.C. § 3582(c)(2).  See id. § 404(b) (authorizing courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed" on motion of defendant).

Haynes argues that the Court may permissibly grant him relief that Congress denied to offenders like him by treating the First Step Act's change to § 924(c)(1)(C) as an "extraordinary and compelling" circumstance warranting a reduction in sentence.  The Court should reject this argument.  First, in the context of the First Step Act, reducing Haynes's sentence because of the Act's amendment to § 924(c)(1)(C) would circumvent Congress's deliberate choice not to make those changes applicable to defendants like Haynes, who were sentenced before the effective date of the Act.  As detailed above, Congress adjusted multiple sentencing provisions in the First Step Act, and directed different results for different groups of defendants.  If the Court were to accept Haynes's argument that the First Step Act's non-retroactive change in the law can nevertheless be given retroactive effect, the Court would defy the express limitation that Congress placed on the Act's amendment to § 924(c)(1)(C).  Thus, even if there may be some changes in the law that could constitute "extraordinary and compelling" circumstances warranting a reduction in sentence, the First Step Act's amendment to § 924(c)(1)(C) cannot serve as the basis for such a finding here, because Congress made clear in the statute its intent not to modify sentences already imposed before the Act's effective date.

Second, there is nothing particularly "extraordinary and compelling" about Congress's choice to make changes to sentencing laws applicable only to pending and future cases. But when Congress does choose to make changes to sentencing laws retroactively applicable to sentenced defendants, it uses more conventional tools to authorize sentencing courts to modify the sentences imposed, such as 18 U.S.C. § 3582(c)(1)(B) ("the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure"), or § 3582(c)(2) (authorizing reduction in term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)").  Thus, a change in the law does not constitute an "extraordinary and compelling" circumstance necessary for a reduction in sentence under § 3582(c)(1)(a).

Accordingly, even if the Court reaches the merits of Haynes's argument that the First Step Act's amendment to § 924(c)(1)(C) is an "extraordinary and compelling" circumstance warranting a reduction in sentence, the Court should reject it because Haynes effectively seeks to make the First Step Act retroactively applicable to him, notwithstanding the fact that, in enacting the First Step Act, Congress deliberately chose not to make the First Step Act's amendments to § 924(c)(1)(C) available to sentenced defendants like Haynes.

II.    HAYNES HAS NOT DEMONSTRATED THAT HE IS NOT A DANGER TO THE COMMUNITY, AND THE COURT LACKS SUFFICIENT INFORMATION TO APPLY THE SECTION 3553(A) FACTORS

A.    Haynes Has Not Demonstrated That He Is Not A Danger To The Community

Assuming, arguendo, that Haynes can establish the existence of "extraordinary and compelling" circumstances warranting a reduction in sentence, the applicable Sentencing Commission policy statement requires Haynes to demonstrate that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. §

1B1.13(2).  Section 3142(g), the provision of the Bail Reform Act relating to the factors affecting

the determination "whether there are conditions of release that will reasonably assure the

appearance of the person as required and the safety of any other person and the community,"

directs the Court to consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).  Here, these factors weigh against a finding that Haynes "is not a danger to

the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

> First, as detailed in the background section supra, Haynes was convicted at trial of

four bank robberies, three of them armed bank robberies in which he brandished a firearm at

terrified bank customers and employees.  These offenses are undeniably serious and, under Second

Circuit law, Haynes's bank robbery convictions are categorically crimes of violence.  See United

States v. Hendricks, 921 F.3d 320, 328 (2d Cir. 2019) (holding that "bank robbery committed 'by

intimidation' categorically constitutes a crime of violence for the purposes of § 924(c)(1)(A)").

Indeed, if Haynes were seeking release on bail pending trial, his § 924(c)(1) firearm offenses would require the Court to presume that he is a danger to the community.  See 18 U.S.C. § 3142(e)(3)(B) ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure . . . the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense under section 924(c) . . . of this title.").

While Haynes's bank robbery and firearms convictions are old—he committed his last offense on February 19, 1992—the absence of any subsequent criminal convictions is due in no small part to the fact that he has been incapacitated by a lengthy term of imprisonment imposed following his conviction for those offenses.  While the Court lacks detailed, objective information about Haynes's conduct while incarcerated because the BOP has not yet completed its assessment of Haynes's Application for Compassionate Release, even the information volunteered by Haynes includes more recent reason for concern.  For example, the "Discipline Reports" section of the "Summary Reentry Plan – Progress Report" that Haynes submitted to the Court indicates that Haynes was disciplined on March 29, 2010, for "possessing a dangerous weapon," and again on July 9, 2015, for "unauthorized physical contact."  (Dkt. No. 99-4 at 3).

Second, Haynes does not share relevant personal characteristics that courts have found to diminish the risk of danger to the community posed by other defendants who have been granted reductions in sentence under § 3582(c)(1)(A).  Haynes does not suffer from a terminal or chronic illness that impairs his ability to function, see United States v. Bellamy, No. CV 15-1658, 2019 WL 3340699, at *6 (D. Minn. July 25, 2019) ("[The defendant] is wheelchair-bound and requires assistance to complete most of his daily activities."), at 51 years of age Haynes is not elderly, see United States v. Johns, No. CR 91-392, 2019 WL 2646663, at *3 (D. Ariz. June 27,

2019) ("Johns is 81 years old."), or frail, see United States v. Wong Chi Fai, No. 93-CR-1340 (RJD), 2019 WL 3428504, at *3 (E.D.N.Y. July 30, 2019) ("Mr. Wong is frail, he requires a walker and can barely eat on his own. His frail condition demonstrates that there are conditions the Court could impose to reasonably assure the safety of any other person and the community.") (quotation marks omitted), and Haynes's underlying convictions are for violent crimes, see United States v. Beck, No. 1:13-CR-186, 2019 WL 2716505, at *10 (M.D.N.C. June 28, 2019) ("While [the defendant] and her husband kept firearms in their home in connection with their drug business, an undoubtedly dangerous crime, there was no evidence or indication that she ever used or pointed a gun at anyone or that she threatened anyone with a firearm.").

Similarly, Haynes's "Release Plan" includes only vague and non-specific responses to basic questions, such as where he plans to live, compare Release Plan at 1, Dkt. No. 99-3 ("I plan to return to Brooklyn"), with Wong Chi Fai, 2019 WL 3428504, at *3 ("[A]ny remote possibility of dangerousness will be further diminished because Mr. Wong will be released to the custody of his family, his whereabouts will be restricted and he will not be permitted to have contact with his co-defendants or any other associates from his former criminal life."), and his sources of community support, compare Release Plan at 2 ("For community support I have my strong faith in God.  I also has some family and friends."), with United States v. Spears, No. 3:98-CR-0208, 2019 WL 5190877, at *4 (D. Or. Oct. 15, 2019) ("The Court has received numerous letters from family and community members pledging housing or emotional, financial, or physical support to Spears if he is released. Spears proposed a release plan, which included seven different housing options, although his preferred option was with his daughter, Dana Spears-Talbert."). The information that Haynes has provided is simply insufficient to permit the Court to determine that

there are conditions of release that would protect the community from the danger presented by his release.

Accordingly, Haynes has failed to present evidence sufficient to establish that he is no longer a danger to the community, or that any conditions of release would be sufficient to mitigate the risk of danger that he presents.

B.     The Court Should Defer Its Consideration Of The Section 3553(a) Factors

The government respectfully submits that Haynes's motion for a reduction in sentence should be denied because he has not demonstrated the existence of "extraordinary and compelling" circumstances warranting that relief and because he has not demonstrated that he is no longer a danger to the community.  If the Court disagrees, the government submits that the Court should defer its consideration of the 18 U.S.C. § 3553(a) factors and defer ruling on Haynes's motion until the BOP completes its assessment of Haynes's Application.

As noted in the preceding section, Haynes's motion is missing critical detail and information that prevents the Court from concluding that he is not a danger to the community, and would similarly hamper the application of the § 3553(a) factors required by U.S.S.G. § 1B1.13. The BOP, however, is still assessing Haynes's Application for Compassionate Release, a process that requires the BOP to gather relevant records and make an informed assessment of Haynes's Application.  See BOP Program Statement 5050.50 at 12 ("Factors and Evaluation of Circumstances in RIS Requests").  Although it may be some time before the BOP finishes assembling relevant records and other materials for the Warden's review of Haynes's Application, those records would provide a more complete picture of Haynes than the limited and non-specific information he has submitted to the Court.

Accordingly, if the Court does not deny the Haynes's motion, the government submits that the Court should defer its consideration of the § 3553(a) factors until the BOP completes its assessment of Haynes's Application.

<u>CONCLUSION</u>

For the reasons set forth above, the Court should deny Haynes's motion for a reduction in sentence.

Dated:    Brooklyn, New York
          October 30, 2019

                                        Respectfully submitted,

                                        RICHARD P. DONOGHUE
                                        UNITED STATES ATTORNEY
                                        Eastern District Of New York

                          By:    /s/ Ian C. Richardson
                                        Ian C. Richardson
                                        Assistant United States Attorney
                                        (718) 254-6299