**United States District Court**
**Eastern District of New York**
------------------------------------X
                                    :
**United States of America,**       :
                                    :   **93-cr-1043-RJD**
                                    :
    - against –                     :   **Motion to Reduce Sentence**
                                    :   **Pursuant to 18 U.S.C.**
                                    :   **§ 3582(c)(1)(A)(i)**
**Kevin Haynes,**                   :
                                    :
        **Defendant.**               :   **ORAL ARGUMENT REQUESTED**
                                    :
------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

David Sarratt
Marisa Taney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

**TABLE OF CONTENTS**

**Page**

DISCUSSION ................................................................................................................................1

I.    The Court Has Authority to Reduce a Sentence for Extraordinary and Compelling Reasons under 18 U.S.C. § 3582(c)(1)(A) ..........................................................................1

II.   Haynes's Circumstances Are Extraordinary and Compelling and Warrant Relief .............5

III.  Haynes is not a Danger to the Community and Qualifies for Resentencing under 18 U.S.C. §§ 3142(G) ..........................................................................................................7

CONCLUSION ..............................................................................................................................9

Kevin Haynes has already served nearly 27 years of a 46.5-year prison term, 45 years of which are based on a mandatory sentencing enhancement that was so harsh it is no longer permitted in circumstances like Haynes's. The government has acknowledged that it would not make the same charging decision today,[1] even if it could, but it continues to contend that this Court has no authority to blunt the consequences of the decision it made. None of the arguments advanced in support of that contention withstands scrutiny.

## DISCUSSION

I.  **The Court Has Authority to Reduce a Sentence for Extraordinary and Compelling Reasons under 18 U.S.C. § 3582(c)(1)(A)**

A plain reading of the revised text of 18 U.S.C. § 3582(c)(1)(A) makes clear that a motion from the BOP is no longer a prerequisite for judicial consideration of a request for compassionate release. In response to the BOP's virtual abdication of its responsibility to make compassionate release motions when warranted, Congress gave defendants themselves the right to bring such a motion directly to the courts even when, as is almost always the case, the BOP refuses to make a motion on their behalf. Congress has thus stated, in no uncertain terms, that the imprimatur of the BOP is no longer necessary before an inmate can obtain relief under 18 U.S.C. § 3582(c)(1)(A).

The government does not and cannot contend otherwise, because the First Step Act and the amended text of § 3582(c), "[l]ike other sentencing statutes,… trump[] the Guidelines." *Dorsey v. United States*, 567 U.S. 260, 266 (2012). Thus, although the first words of the relevant policy statement, U.S.S.G. § 1B1.13 (the "Policy Statement"), require a "motion of the Director

---

[1] *See* Declaration of Marisa R. Taney in Support of Reply ("Taney Reply Decl.") Ex. 1 (Transcript of Criminal Cause for Status Conference, *United States v. Kevin Haynes* at 13:14-16 (Dec. 13, 2018) (Mr. Richardson noting his view that "it's unlikely that a similar charging decision could be made now," but declining to exercise prosecutorial discretion in order to consent to dismissing a count of the indictment.))

1

of the Bureau of Prisons" before *any* sentence reduction can be ordered under § 3582(c)(1)(A), the government essentially concedes that prerequisite must now be ignored. And though the commentary to the Policy Statement in Application Note 4 also requires such a motion, the government concedes that must be ignored as well. Dkt. No. 101, Gov't's Mem. of Law in Opposition ("Opp'n.") at 13. Notwithstanding this, the government contends that there is a single mention of the BOP in the commentary—in Application Note 1(D)—that the amendments to the compassionate release statute somehow left untouched. Specifically, the government says that Congress left the BOP as the sole arbiter—the gatekeeper who never opens the gate—when it comes to sentence reductions based on "other" extraordinary and compelling reasons. Opp'n. at 15-16 (arguing that under Application Note 1(D), a sentence reduction can be ordered based on extraordinary and compelling reasons only when the BOP "determine[s]" such reasons exist in the case).

This argument is indefensible.

First, there is no textual basis in the statute as amended for such a carve-out from the judicial authority conferred by the First Step Act, and the government does not attempt to argue otherwise. That is reason enough to reject the government's contention. Second, the rest of the government's argument would be laughable if there were not so much at stake for Haynes. It contends that its manufactured limitation on the Court's authority under the amended statute makes "good sense" because the BOP is not only "well-suited" to determine when extraordinary and compelling circumstances warrant a sentence reduction, but has "significant institutional advantages" in that endeavor, presumably as compared to the Court. Opp'n. at 15.

The defects in this argument are numerous. For one, the Sentencing Commission certainly did not share the government's view, as it explicitly encourages liberal filing of these

2

motions when the predicates are met, in light of the fact that "court[s] [are] in a unique position to determine whether the circumstances warrant a reduction." Application Note 4; *see also United States v. Brown*, 4:05-CR-00227-1, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 10, 2019) (observing the courts' role in "[r]eleasing defendants from incarceration is a delicate business—although not any more so than incarcerating them initially."); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("An interpretation of the old policy statement as binding on the new compassionate release procedure is likely inconsistent with the Commission's statutory role."); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019) (vesting the Director of the BOP with authority to determine whether extraordinary and compelling reasons are present "no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court.").[2] The only thing the BOP has proven itself "well-suited" to do in this context is to *never* find that extraordinary and compelling circumstances (beyond age, infirmity, and caregiver status) warrant sentence reductions.

The "institutional advantage" argument similarly falls flat. Indeed, much of the conduct that the Policy Statement urges courts to consider in evaluating these motions includes pre-incarceration facts of which the Court was aware at the time of sentencing.[3] The government itself relies on Haynes's offense conduct in its argument that relief should not be granted. Opp'n. at 23-24. It is hard to fathom how the BOP can be institutionally better suited than the Court to

---

[2] The government relies on *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019), *appeal docketed*, No. 19-3239 (11th Cir. Aug. 21, 2019), but that case fails even to consider that the First Step Act fundamentally changed the legal landscape within which the Guidelines operate.

[3] *See* Policy Statement, Application Note 2 ("the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction").

3

consider such inputs. Even when it comes to Haynes's rehabilitation and conduct while in BOP's custody, there is no reason to believe that FCI wardens, whose wooden refusal to make compassionate release motions gave rise to the amendments at issue here, are better suited than an Article III judge to evaluate and weigh such facts.

In short, Congress has removed the BOP's blessing as a prerequisite to relief under § 3582(c). The First Step Act trumps the Policy Statement, requiring courts to ignore all aspects of the statement that require the assent of the BOP. The government's contention that the First Step Act amendments somehow left intact Application Note 1(D), preserving the BOP's control over what can constitute extraordinary and compelling reasons other than medical condition, old age, and caregiver status, is frivolous. There is no support for it in the text of the First Step Act or (assuming it were relevant) the legislative history. It is cynical, as the absence of a quorum on the Sentencing Commission will ensure that this form of compassionate release will remain unavailable indefinitely. And it is contradicted by multiple courts that have suggested the Policy Statement is no longer applicable at all once the BOP's role was changed in § 3582(c). *See United States v. Spears*, 3:98-cr-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) ("Some courts have held that the current Policy Statement is not binding on courts with respect to a compassionate release motion by a prisoner made after the First Step Act, because the Policy Statement only applies to motions filed by the BOP."); *United States v. Gonzales*, SA-05-CR-561-XR, 2019 WL 5102742, at *3 (W.D. Tex. Oct. 10, 2019) ("Inasmuch as the Sentencing Guidelines are no longer mandatory, it seems inconsistent to hold that judges are nevertheless bound by U.S.S.G. § 1B1.13"); 18 U.S.C. § 3582(c)(1)(A)(ii) (allowing "reduction[s] [] consistent with *applicable policy statements* issued by the Sentencing Commission.") (emphasis added).

4

## II. Haynes's Circumstances Are Extraordinary and Compelling and Warrant Relief

The government argues that even if the Court has the authority to decide what "other" reasons are sufficiently "extraordinary and compelling" to warrant a sentence reduction, Haynes's "stacked" sentences under § 924(c)—and the changes made to that statute by the First Step Act that now prohibit such sentences—do not constitute permissible considerations in determining whether to grant a sentence reduction. Opp'n. at 19-22. To hold otherwise, the government contends, would amount to an improper end run around the decision by Congress not to make those amendments retroactive.

This argument is flawed because *taking into account* the fact that such onerous sentences are no longer permitted in determining whether extraordinary and compelling reasons warrant a reduction is not remotely equivalent to rendering the amendment to § 924(c) retroactive. If Congress had made that amendment retroactive, every single recipient of stacked § 924(c) sentences, even those whose particular circumstances could not be described as extraordinary or compelling, would have a right to seek relief. Indeed, that is precisely the case with respect to inmates whose crack cocaine sentences were reduced by the Fair Sentencing Act, which the First Step Act made retroactive. But Congress's decision not to afford *every* inmate serving stacked § 924(c) sentences an opportunity to obtain a sentence reduction does not alter the fact that its amendments to the compassionate release statute affords a narrow subset of those inmates—those whose cases present truly extraordinary and compelling circumstances—the possibility of a sentence reduction under that statute. Nothing in the First Step Act suggests that by electing not to make the amendment to § 924(c) retroactive, Congress also intended to foreclose other discretionary avenues of sentencing relief for inmates with prior stacked § 924(c) convictions. *See* Dkt. No. 99-1, Def.'s Mem. Law ("Mem.") at 9-10. And the fact that sentences like

5

Haynes's were considered by Congress to be so beyond the pale that no one will ever be subjected to them going forward should of course inform the Court's decision.[4]

Second, the government artificially circumscribes the factors Haynes has asked the Court to consider—citing only Hayne's references to changes in the law and Haynes's rehabilitation—and then argues that neither of these is sufficiently compelling to warrant a sentence reduction. Opp'n. at 7, 19-20 & n.1. This contention ignores the clear case law and other support in Haynes's submissions for the proposition that these factors, *combined with* other factors, should be considered in determining whether to grant compassionate release. *See, e.g., United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019).[5] In addition to the fact that Haynes could not receive the same ultra-harsh sentence today and his rehabilitation while incarcerated, there are a host of other factors that make his circumstances extraordinary and compelling. *See* Mem. at 12-15. For example, his sentence was the direct result of a trial penalty he received for refusing to take a plea deal—an offer that would have yielded a

---

[4] In contrast to *Brown*, cited in the Opp'n. at 20, n.1, Haynes has already served a sentence longer than could be imposed under § 924(c) as it currently stands, which, as Judge Pratt suggested, could create a sentencing disparity that *is* an extraordinary and compelling reason for compassionate release. *Brown*, 2019 WL 4942051, at *6.

[5] In *United States v. Cantu-Rivera*, CR No. H-89-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019), for example, the court found that the defendant had satisfied the requirements of § 1B1.13's catch-all provision based on a "combination of factors," including the "fundamental change to sentencing policy carried out in the First Step Act's elimination" of a now-defunct sentencing enhancement scheme and the defendant's rehabilitation. *Cantu-Rivera*, 2019 WL 2578272, at *2. The court in *Cantu-Rivera* acknowledged that "in light of the changed circumstances…, a sentence of time served, representing 30 years in prison, reflects the seriousness of the offense, promotes respect for the law and provides just punishment." *Id.* (citing § 3553(a)(2)(A)). The court also noted sentencing disparities akin to those cited by Haynes, and held that a reduction in sentence for Cantu-Rivera would "avoid unwarranted disparities among defendants with similar records convicted of similar conduct in this same case because this 30-year sentence exceeds the sentences imposed on other members of the… conspiracy." *Id*. While Cantu-Rivera also met the age threshold under Application Note 1(B), nothing in the court's decision indicated that, absent the defendant's age, he would not have been eligible for the same relief based on the other extraordinary and compelling factors cited.

guidelines range of approximately 93 to 101 months. Mem. at 2. His much more culpable co-defendant agreed to plead guilty, was incarcerated, was released many years ago, was convicted of more bank robberies, and was re-incarcerated, but he *is still scheduled to be released before* Haynes. *See* Mem. at 3, 14 & n.3. Haynes was 23 when he committed his crimes, and neuroscience advancements since that time have informed us that he was not likely to recidivate at the time of his arrest, let alone now.[6] Mem. at 13. Finally, Haynes is deeply remorseful and has sought to live the best possible life while in prison. *See* Mem. at 13. No legitimate goal of incarceration can be served by continuing Haynes's sentence beyond its 27th year. *See* Mem. at 14-15.

### III. Haynes is not a Danger to the Community and Qualifies for Resentencing under 18 U.S.C. §§ 3142(G)

Finally, the government claims that Haynes does not satisfy the requirements for resentencing under § 3582(c)(1)(A) because he is a danger to the community. In so doing, it relies primarily on one fact: that Haynes was convicted of robberies in 1992. Putting aside the fact that the government was content to offer Haynes a plea bargain that would have resulted in his release nearly 20 years ago, the only issue before the Court in this regard is whether Haynes will pose a danger *now*, and there is no basis to conclude that he will.

---

[6] We commend to the Court the publication MacArthur Foundation Research Network on Law and Neuroscience, How Should Justice Policy Treat Young Offenders? (Feb. 2017), http://www.lawneuro.org/adol_dev_brief.pdf. The article underscores two important propositions in this case. One is that delinquency in adolescents (and that term included Haynes at the time the offenses were committed) "is usually not an indication of an indelible personality trait." *Id.* at 2. The other is that there is every reason to believe Haynes will have aged out of violent crime by the time he is released if the Court agrees that his sentence should be reduced. *Id. See also* Rachel Elise Barkow, Prisoners of Politics 44-45 (2019) ("Most juveniles discontinue their criminal activity after brief experimentation with it.").

7

The government's cursory note that Haynes has been "disciplined" while incarcerated is wholly unpersuasive. Opp'n. at 24. The discipline reports (which were *not* adjudicated punishments) cited by the government date from no later than 2015. Most importantly, the government cannot pick and choose which parts of Haynes's prison record to bring before the Court, nor can it cite reports of alleged infractions without an explanation of what actually took place. Outside of three "incidents" cited over nearly three decades in prison, Haynes's record is replete with instances of good conduct and self-improvement. Since 2010, these include recognition for "outstanding work performance ratings from his [work] detail supervisor," the completion of eleven educational courses since arriving at USP Pollock, and an otherwise-clear disciplinary record. *See* Dkt. No. 99-4 (BOP Disciplinary Report).

The government even takes issue with Haynes's release plan, complaining that it provides an insufficient description of his plans for reentry. Opp'n. at 25. Putting aside the fact that the plan complies in full with the requirements of the BOP, Haynes's submission should be considered in conjunction with the extensive filings before this Court. That information reveals that Haynes is a middle-aged man, unlikely to recidivate, with useful and marketable skills. *See* Mem. at 16. In addition, the Federal Defenders of New York has offered to assist Haynes in his re-entry—supplementing the services Haynes will receive from the Probation Department—and one of the organization's social workers has provided a letter to that effect. *See* Taney Reply Decl. Ex. 2 (Letter from Brittany Larson, LMSW, Federal Defenders of New York, Inc., to the Hon. Raymond J. Dearie (Oct. 23, 2019)). In any event, Haynes is happy to furnish further detail addressing any specific concerns this Court has and to submit to any reasonable conditions of supervised release to allay those concerns.

8

**CONCLUSION**

More than anything else, the government's opposition to this motion reflects two things. The first is how numb the government has become to sentence lengths in this era of Guidelines and mandatory sentencing provisions. In trying to defend the indefensible prison term imposed on Haynes, the government cannot repeat enough that he "waved a revolver" or "brandish[ed] a revolver," as though those actions all those years ago warranted not only the 27 years Haynes has already served, but the 14-and-a-half more years the government insists he serve. But if, instead of waving a revolver during crimes in which no one was physically injured, Haynes had used a firearm to kill someone and been prosecuted for murder, he likely would have been released from prison a decade ago.[7] The second thing the government's opposition reflects is the natural and powerful resistance all institutions demonstrate when their power is diminished. Three decades ago, a distrust of judges resulted in a dramatic shift in sentencing authority away from them, which empowered the executive branch. The government went from having no role in the sentencing decision to having a central role, and in some cases, like this one, the only role. In the past several years, a consensus has developed that the new regime resulted in dramatic over-incarceration. The First Step Act is indeed the first step, and a small one at that, to rectify that problem. Ever so slightly, in a narrow slice of cases, it has returned some trust to judges. Its amendments to 18 U.S.C. § 3582(C)(1)(A)(i) now give this Court the authority to bring a belated measure of justice to those whose cases present truly extraordinary and compelling

---

[7] The average sentence for murder in federal courts in fiscal year 2017, the last year for which the Sentencing Commission has provided statistics, was 224 months and the median sentence for murder was 180 months. *See* United States Sentencing Commission, Interactive Sourcebook of Federal Sentencing Statistics, Fiscal Year 2017, Table 13, https://isb.ussc.gov/api/repos/:USSC:table_xx.xcdf/generatedContent?table_num=Table13. According to the Bureau of Justice Statistics, the average time served for murder in state prisons before the inmate's first release was 15 years. *See* U.S. Dept. of Justice, Bureau of Justice Statistics, Bulletin: Time Served in State Prison, 2016 (Nov. 2018), https://www.bjs.gov/content/pub/pdf/tssp16.pdf.

circumstances. The case of Kevin Haynes, as this Court has already observed, fits that description. Accordingly, Haynes respectfully requests that the Court grant a reduction in his sentence pursuant to § 3582(c)(1)(A)(i) to time served.

Dated: November 12, 2019
      New York, New York

                                    Respectfully submitted,

                                    DEBEVOISE & PLIMPTON LLP

                          By:  /s/ David Sarratt

                                  David Sarratt (*dsarratt@debevoise.com*)
                                  Marisa Taney (*mtaney@debevoise.com*)

                                  919 Third Avenue
                                  New York, New York 10022
                                  Tel #: (212) 909-6000
                                  Fax #: (212) 909-6836

                                  *Counsel to Kevin Haynes*